HOUGHTON *v.* COLLINS.

1. VENDOR AND PURCHASER—ABANDONMENT OF LAND CONTRACT BY PURCHASER.

Finding of trial court that purchaser's interest in land contract to purchase a vacant lot had been abandoned *held,* sustained by evidence.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 55 Am Jur, Vendor and Purchaser §§ 339, 340, 617 *et seq.*
[4] 3 Am Jur, Appeal and Error § 1052 *et seq.*
[5] 3 Am Jur, Appeal and Error §§ 814, 815, 859.

2. Same—Abandonment of Land Contract.
   The right of a party to a contract for the purchase of real estate may be lost by abandonment.

3. Same—Abandonment of Land Contract—Evidence—Intent.
   Abandonment of a land contract by the purchaser is shown, where he fails to make payments due, accompanied by other circumstances, or by conduct clearly showing intention to abandon the contract.

4. Appeal and Error—Claim of Prejudice and Bias.
   Appellant's claims of partiality, prejudice and bias on part of trial court in suit to set aside quitclaim deed and assignment of land contract *held*, even if true, to constitute no basis for reversal of decree for plaintiff, since they were indicative of the court's lack of belief in the merits of appellant's claims.

5. Same—Chancery Cases—De Novo Review.
   The Supreme Court hears a chancery case *de novo*.

6. Same—Questions Reviewable—Constitutional Law.
   No constitutional question *held*, to have been involved in suit to set aside a quitclaim deed and assignment of land contract.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 11, 1955. (Docket No. 62, Calendar No. 46,491.) Decided December 1, 1955.

Bill by William A. Houghton, Josephine Houghton, Grace Houghton Miller, William Stuart Smith and Coral Mae Smith against Harold W. Collins, Ruth S. Collins and Luther Coleman to set aside quitclaim deed and assignment of land contract. Cross bill by Coleman to enforce contract claimed to have been abandoned. Defendants Collins disclaim any interest. Decree for plaintiffs. Defendant Coleman appeals. Affirmed.

*Reid & Gilmore*, for plaintiffs.

*Luther Coleman, in propria persona.*

Boyles, J. In this case plaintiffs filed a bill of complaint in the circuit court for Wayne county in

chancery to set aside a certain quitclaim deed and an assignment of a land contract executed by defendants Collins and wife to defendant Coleman. Coleman filed a cross bill asking that the plaintiffs be ordered to convey to him the property in question upon his payment to them of the principal amount due on the contract together with any sums paid by the plaintiffs for taxes and tax redemptions. The property in question is a vacant lot in Houghton Manor subdivision in Detroit.

At the conclusion of a hearing and the taking of testimony, the trial judge dictated an opinion, and entered a decree accordingly, that the legal title to the property in question was in the plaintiffs, Smith and wife, that the quitclaim deed and assignment of land contract from defendants Collins and wife to defendant Coleman conveyed nothing and should be discharged of record; that defendant Coleman pay plaintiffs $500 damages, costs and expenses suffered by plaintiffs from Coleman's malicious slander of plaintiffs' title; and that Coleman's cross bill be dismissed. Defendant Coleman appeals, filing a brief *in propria persona.* Defendants Collins and wife disclaim any interest in the property and do not appeal.

No question is raised on the appeal regarding the allowance of $500 to the plaintiffs. The essential question which now controls decision is whether the land contract, on the assignment of which Coleman bases his claim of an interest in the property, had long been abandoned by the parties to it. If so, defendants Collins and wife, as grantors in the quitclaim deed on which Coleman also relies, had nothing to convey to him.

In 1926 the then-owners subdivided Houghton Manor subdivision and sold lots, including the one here involved, on land contracts. In 1926 this particular lot was thus sold on land contract to one

Connie DuBois who assigned his interest therein as vendee to Will E. and Berneice Collins, the latter being the mother of defendant Harold W. Collins and the person from whom Harold W. Collins later received his interest, if any, as her heir-at-law. There was proof that she had disclaimed any interest in the contract, and that when she died in 1952 her estate did not inventory any interest in said contract as an asset. Consequently, defendants Harold Collins and wife disclaimed any interest in the property in question.

Payments which had been made on the contract from 1926 to August 3, 1932, were discontinued on the latter date. No payments have since been made during the 21 years intervening between 1932 and 1953, at which time defendant Coleman began to be interested in the title. During that time some taxes had been paid on the property and in 1953 the owners-vendors executed a warranty deed of the property in question to plaintiffs Smith and wife. Smith was the owners' "selling agent" who had taken care of the contracts and handled the owners' real-estate matters. At that time there was a prospective deal in the making to sell the property for $2,000. The plaintiff Smith, for a share of the proceeds to be realized from the sale, paid up the back taxes, agreed to clear up the title, and took from the owners the deed referred to.

According to defendant Coleman's testimony, he was a "title investigator," in the business of purchasing properties because of some title defect. He had examined the estate of one Minnie Houghton, and contacted plaintiff William Houghton in regard to his title to the lot in question. Houghton offered to sell his interest in the property for $800 or $900. Defendant Coleman then hunted up defendant Harold Collins who apparently had some record interest in the property as an heir-at-law under an

old land contract. Coleman paid Collins $50 for a quitclaim deed and an assignment of any interest which he or his deceased mother, Berneice Collins, had in the old land contract which had apparently been abandoned. But at that time, as well as in his testimony in the hearing in the case, defendant Harold Collins disclaimed having any interest in the property. Coleman proceeded to put the quitclaim deed and assignment of land contract on record. He then contacted plaintiff Smith, who had been the agent for plaintiffs-owners Houghton, and offered to take $750 for his "interest" in the property. The instant suit followed.

The trial court, hearing and seeing the witnesses, correctly analyzed the situation. The court said:

"I am of the opinion that the Collins abandoned this property at least in the year 1947, and under the evidence an abandonment might be claimed going back as far as 1932 when the last payment was made, but there is some question as to who paid the taxes up to 1947. But in 1947 we have the testimony that her son [Harold] talked to Mrs. Collins, Sr., about the matter and then she talked to an attorney about the matter, and the attorney advised her that she might as well forget the whole matter, and from then on the record is clear that she took no further interest in the property. * * *

"I am of the opinion that Mr. Collins' version of the affair is the correct one. He told Mr. Coleman they had no interest in the lot; that they did not claim any interest in the lot; that the contract had been abandoned; that his mother talked to an attorney in 1947 about the matter and was advised to forget it; that the only reason he gave the deed to Mr. Coleman was because he understood from Mr. Coleman that he wanted to clear the title, and that Mr. Coleman had an interest in the property.

"Mr. Coleman, I think, testified that he had an interest in the property and wanted to clear the title,

and he asked Mr. Collins to give him a quitclaim deed and an assignment, so at the time Mr. Coleman obtained the assignment and the quitclaim deed he knew that the Collins' had disclaimed any interest in the property and had in effect legally abandoned the same.

"Now, as to the question of Mr. Houghton's acquiescence of the abandonment,   *   *   *   we have the files of the probate court as early as 1947 which show that. We have an order of the probate court allowing him as executor of the estate to abandon this contract. We had the order here, which showed that the court allowed him to abandon this land contract with the Collins. So there is a public record showing that they had acquiesced in the abandonment, and therefore there isn't any question that both sides agreed that the contract was abandoned, although I don't think that was necessary.

"Therefore, I think that Mr. Coleman received nothing when he received the deed."

We agree with the conclusion reached by the trial court, the right of a party to a contract for the purchase of real estate may be lost by abandonment. *Stevens* v. *Wakeman,* 213 Mich 559; *Nelson* v. *Hacker,* 278 Mich 383.

"Abandonment of a land contract by the purchaser is shown where he fails to make payments due, accompanied by other circumstances, or by conduct clearly showing intention to abandon the contract." *Dundas* v. *Foster* (syllabus), 281 Mich 117.

We have considered other questions raised by appellant in his brief. The court did not err in receiving testimony. The partiality, prejudice and bias which appellant claims was shown by the trial judge on some occasions during the hearing, while indicative of the court's lack of belief in the merits of Coleman's claims, even if true, constitute no basis for reversal. This Court, on an appeal from a de-

·cree entered in a chancery case, hears the entire matter *de novo.* Neither do we find, as claimed by the appellant, that he has been deprived of his property "without due process of law." No constitutional question is involved in the case.

Decree affirmed. Costs to appellees.

CARR, C. J., and BUTZEL, SMITH, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.