LINDHOUT v INGERSOLL

1. LICENSES—BUILDING CONTRACTORS—STATUTES—RECOVERY FOR
   WORK PERFORMED—COUNTERCLAIM—SET-OFF.

   Failure of a building contractor to comply with the licensing
   statute precludes him from recovering for work performed, and
   the mere fact that his claim is made in the form of a counter-
   claim or set-off rather than in an independent action does not
   require a different result (MCLA 338.1516).

2. JUDGES—TRIAL—NON-JURY TRIAL—COMMENTS BY JUDGE—FAIR
   TRIAL.

   A judge in a non-jury trial is properly allowed more freedom in
   his comments than in a jury trial, and comments by a judge
   which sprang from his disbelief of a defendant's testimony did
   not deny the defendant his right to a fair trial before an
   impartial tribunal.

3. REFERENCE—COURTS—APPOINTMENT OF REFEREE—STATUTORY AU-
   THORITY—REVERSIBLE ERROR.

   A court may appoint a referee in an action at law only where
   there is specific statutory authority to do so, and to so appoint a
   referee over objection in the absence of statutory authority is
   reversible error.

4. REFERENCE—COURTS—APPOINTMENT OF REFEREE—HARMLESS ERROR
   —JUDGES—VISITATION OF PREMISES.

   The appointment by a trial judge of a referee to inspect a home
   for defects which were the subject matter of litigation, other-
   wise reversible error, was rendered harmless where the judge
   personally visited the premises and inspected the defects and
   his opinion reveals that he did not rely solely on the report of
   the referee in evaluating the conflicting claims as to the condi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Buildings § 10.
[2] 76 Am Jur 2d, Trial § 1238 et seq.
[3] 66 Am Jur 2d, References §§ 4, 5, 27, 28.
[4] 76 Am Jur 2d, Trial § 1250 et seq.
[5] 20 Am Jur 2d, Costs §§ 73, 79–82.

tion of the premises and where there was ample competent evidence to support the judge's conclusion.

5. COSTS—ATTORNEYS FEES—AUTHORIZATION—STATUTES—COURT RULES.

Courts have generally refused to allow attorneys' fees to be taxed as costs, unless authorized by statute or court rule.

Appeal from Kent, John H. VanderWal, J. Submitted Division 3 December 4, 1974, at Grand Rapids. (Docket No. 18560.) Decided February 11, 1975.

Complaint by William Lindhout and Chris Lindhout against Robert E. Ingersoll for damages for breach of contract. Defendant counterclaimed for certain "extras". Judgment for plaintiffs. Defendant appeals. Affirmed.

*Annis, Annis & Oldstrom,* for plaintiffs.

*Edward J. Kehoe, Jr.,* for defendant.

Before: T. M. BURNS, P. J., and QUINN and O'HARA,* JJ.

O'HARA, J. The plaintiffs, William and Chris Lindhout, sought to remodel their cottage into a year-round home. They discussed with defendant Ingersoll the possibility of his undertaking the project. Defendant represented himself to be a licensed builder. In point of fact, he never received a license until after he discontinued work on the Lindhout home. Ingersoll examined the cottage and using ideas furnished by the plaintiffs drew up a blueprint for the remodeling work. The negotiations culminated in a contract calling for the work to be done at an agreed-on price of some $15,850.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

As the work on the cottage proceeded, serious problems began to develop. Irrespective of the substantial difficulties, plaintiffs made payments which were considerably in excess of the contract price.

Plaintiffs eventually brought suit seeking damages for defendant's failure to perform his contractual obligations. The plaintiffs alleged that the work was not done according to the contract and that it was performed in an unworkmanlike manner. In his answer defendant denied these allegations and included a counterclaim for "extras". Prior to trial the lower court granted plaintiffs' motion for summary judgment on the defendant's counterclaim. The basis for this action was MCLA 338.1516; MSA 18.86(116), which precludes a builder from recovering for work performed when he lacked the necessary license mandated by statute. The remainder of the case was tried to the court which found that defendant breached the contract by not performing according to the plan and by doing the work in an unworkmanlike manner. From the decision of the trial court and a judgment in the amount of $12,094.10 defendant appeals of right.

The first claim of defendant pertains to MCLA 338.1516, *supra.* Defendant concedes that at the time of this contract he was an unlicensed builder and therefor subject to the provisions of that statute. He further concedes that he is barred from bringing a separate cause of action for certain "extras" but claims that the statutory framework does not preclude him from setting off the "extras" as against the damages owed to the plaintiffs.

In attempting to support this theory defendant relies on *Lake States Engineering Corp v Lawrence Seaway Corp,* 15 Mich App 637; 167 NW2d

320 (1969). This reliance is, however, misplaced. In that case Lake States brought an action as subcontractor to recover from Lawrence, the general contractor. Lawrence filed a counterclaim for an alleged breach of the same contract. Since Lawrence was not a licensed builder, Lake States attempted to raise MCLA 338.1516 as a defense to the counterclaim. In rejecting that defense this Court noted Lawrence was seeking to recover for *non-performance* of a subcontractor (Lake States) and not for its own *performance.*

In the instant case the defendant was attempting to recover for his own *performance.* The mere fact that this claim is made in the form of a counterclaim or set-off rather than in an independent action should not dictate a different result. The statute was enacted to protect homeowners from just such a situation. In addition this Court also recently indicated that a failure to comply with the licensing act would be a good defense to a builder's counterclaim. *King Arthur's Court v Badgley,* 47 Mich App 222; 209 NW2d 488 (1973). Consequently, the trial court acted properly in granting the plaintiffs' motion for summary judgment on this counterclaim.

The next issue raised by defendant is that the conduct of the trial court had the effect of denying defendant his right to a fair trial before an impartial tribunal.

This same issue was before the Court in *Tait v Ross,* 37 Mich App 205; 194 NW2d 554 (1971), *lv den,* 386 Mich 787 (1972), *cert den* 407 US 921; 92 S Ct 2462; 32 L Ed 2d 806 (1972). In *Tait* this Court stated at page 207:

"Defendant also contends that the trial court denied him a fair and impartial trial by its repeated demonstration of hostility to defendant and his witnesses,

lawyer and cause, and its disparagement of same, and by its constant argumentative and hostile interruptions in examination of witnesses. Examination of the record indicates that defendant was not denied a fair and impartial trial. While the trial judge, sitting as trier of fact, engaged in extensive questioning of witnesses, this alone has not been held to be error. *People v Wilder,* 383 Mich 122; 174 NW2d 562 (1970). The substance of the trial judge's questions and comments focused on what he considered was the lack of credibility in certain of defendant's witnesses and in defendant's own statements. In *Houghton v Collins,* 344 Mich 175, 180; 73 NW2d 208 (1955), a civil case heard by a judge sitting as trier of fact, the Michigan Supreme Court stated:

" 'The partiality, prejudice and bias which appellant claims was shown by the trial judge on some occasions during the hearing, while indicative of the court's lack of belief in the merits of Coleman's claim, even if true, constitute no basis for reversal.' "

As in *Tait,* the trial judge's comments sprang from his disbelief of the defendant's testimony. Since this was a non-jury case the judge is properly allowed more freedom in his comments. *Meyering v Russell,* 53 Mich App 695; 220 NW2d 121 (1974).

Third, defendant claims that the trial court erred in awarding damages on the original blueprint since the plaintiffs agreed to substantial changes from that plan. Defendant further argues that additional height could be given to the upstairs without tearing down the whole structure.

The trial court found that the defendant represented himself to the plaintiffs as a licensed builder. Accordingly, it is easy to understand why the plaintiffs, who had no experience in this area, trusted the defendant's judgment. Though there were some deviations from the original blueprint they resulted from the defendant's poor planning. It is totally inaccurate to say that the plaintiffs initiated changes in the original plans. The only

thing the plaintiffs did was place their trust in a man not worthy of that trust. Hence any deviations from the original plans were directly chargeable to the defendant's incompetence and the misrepresentations of his true building skills.

Closely related to this claimed error is the assertion that the trial court applied an improper standard in fixing the measure of damages. The defendant argues that the construction defects could be cured by installation of a dormer, which would bring added height to the home. The defendant's problems on this project began with an admitted design defect involving the upper floor. This mistake left the upstairs with a 9-inch height deficiency. Another result was the inability of an adult to use the upstairs bathroom. The plaintiffs' expert witness testified that the only way to make the home conform to the contract would be to remove the second floor and begin over again. The trial court properly found that defendant failed to substantially perform[1] the contract and it did not err in determining the applicable measure of damages. See generally, *Gutov v Clark,* 190 Mich 381; 157 NW 49 (1916); *Schultz v Sapiro,* 23 Mich App 324; 178 NW2d 521 (1970).

The next and most substantial allegation raised on appeal deals with the authority, if any, of the trial court to appoint a referee to inspect the premises and report on his findings.

The plaintiffs presented a long list of defects in the construction work on their house. In an effort to expedite the final determination in this matter, the trial court appointed a referee to inspect the premises and report on its condition. As authority

---

[1] *See Gordon v Great Lakes Bowling Corp,* 18 Mich App 358; 171 NW2d 225 (1969), for a general statement of the substantial performance doctrine.

for this action the court cited MCLA 600.611; MSA 27A.611, which provides as follows:

"Circuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments."

Defense counsel objected to the appointment on the grounds *inter alia* the statute did not give the court the authority to make a compulsory reference and that the individual designated was not qualified for the job.

There is authority that compulsory references in common law actions were unknown and that the extent to which they presently exist is by virtue of statute. See 66 Am Jur 2d, References, § 2, p 478. See also 76 CJS, References, § 12, p 191.

The practice of the trial bench appointing referees is hardly unknown to the jurisprudence of Michigan as evidenced by the cases cited in 19 MLP, Reference, § 1 *et seq.* At one time there was specific statutory authorization for a court to appoint referees in certain cases. MCLA 618.68; MSA 27.1048. The statute was repealed by 1961 PA 236.[2] The subject matter of the statute was then incorporated into GCR 1963, 920. This court rule was deleted in 1969.[3] The power to appoint a referee is still directly conferred upon the court by statute in certain limited cases. See for example, MCLA 600.3165; MSA 27A.3165 (foreclosure actions), MCLA 600.6110; MSA 27A.6110 (discovery of judgment debtor's assets), MCLA 712A.10; MSA 27.3178 (598.10) (probation officer or county agent

---

[2] The former MCLA 618.68; MSA 27.1048 is set forth in 19 MLP, Reference, § 1, p 418.

[3] Former GCR 1963, 920 may be found in the rules volume of Callaghan's Michigan Pleading and Practice (1st ed) beginning at page 349.

acting as referee), MCLA 552.253; MSA 25.173 (friend of the court acting as referee), MCLA 725.19; MSA 27.3959 (referees in municipal courts). In 126 ALR 314, 315–319, numerous cases are cited and discussed for the proposition that statutory enumeration of the types of cases in which compulsory references may be had at law necessarily excludes cases not encompassed by the statutory provision. The repeal of the general statute and court rule and the specific inclusion of the power in other statutes lead this Court to the conclusion that a referee may be appointed in actions at law only where there is specific statutory authority therefor. Hence we specifically disapprove the practice of making references such as that involved in the instant case.

Though it otherwise would have been reversible error to order over objection the reference in the absence of statutory authority, there is an additional fact which renders the unauthorized reference harmless error.

The learned trial judge *personally* visited the premises and made an inspection of the alleged defects. Our examination of the trial judge's detailed opinion (some 22 pages) reveals that he did not rely solely on the report of the referee in evaluating the conflicting claims as to the condition of the premises. Frequent citation is made in the opinion to what the trial judge observed personally on the occasion of his own visit.

We find no indication of real prejudice to defendant's cause. We find that there is ample competent evidence to support the trial court's conclusion as to the alleged defects in the premises.

Now defendant argues that the trial court erred in approving the witness fees for plaintiffs' expert witness.

The witness in question was an experienced general contractor. The court did not abuse its sound discretion in finding this witness qualified as an expert. Neither do we find it erred reversibly in determining the sums to which the witness was entitled.

Plaintiffs claim that they should have been allowed attorneys' fees since the defendant's denials in this case were unreasonable. GCR 1963, 111.6.

As a general rule, courts have refused to allow attorneys' fees to be taxed as costs, unless authorized by statute or court rule. *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973). Unlike *Harvey v Lewis,* 10 Mich App 23; 158 NW2d 809 (1968), the trial judge in the instant case found that there were none, or very few unwarranted denials made by the defendant and that there also was no evidence of any bad faith shown. On this record, we may not permissibly take a contrary view.

There is no error which would justify reversing the trial judge. Perforce, we affirm.

No costs. Neither party prevailed *in toto.*