VALLEY NATIONAL BANK OF ARIZONA v KLINE

Docket No. 50974. Submitted May 6, 1981, at Lansing.—Decided July 28, 1981.

Edwin Stewart brought an action in the Livingston Circuit Court against Earl W. and Frances Kline to recover money owed on a promissory note. The note recited that the money was due only from the net profits from the sale of certain real property. Prior to trial, Valley National Bank of Arizona and Florence Stewart, as representatives of the estate of Edwin L. Stewart, deceased, were substituted as plaintiffs. The court, Paul R. Mahinske, J., granted judgment on the note and awarded expenses and attorney fees pursuant to GCR 1963, 111.6. Defendants appealed, alleging that the court misallocated the burden of proof with regard to the existence of the condition precedent, erred in not allowing the admission of Mr. Kline's deposition, and erred in allowing expenses and attorney fees. *Held:*

1. The General Court Rules allow the existence of all conditions precedent to be pled generally but require that denials of conditions precedent be made with particularity. The issue of the existence of a condition precedent was not raised for trial because of defendants' failure to deny specifically its existence.

2. The trial court properly excluded Mr. Kline's deposition from evidence. The burden of proving the admissibility of a deposition is upon the party seeking its admission. Defendants failed to meet that burden.

3. A trial court must make a finding that a party's allegations or denials were unwarranted before it may assess attorney fees under the court rule providing for attorney fees because of unwarranted allegations or denials. The trial court erred in failing to find that defendants' denials were unwarranted.

Affirmed in part, reversed in part and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading § 147.
[2] 23 Am Jur 2d, Depositions and Discovery § 119.
[3] 20 Am Jur 2d, Costs § 72.

1. Pleading — Conditions Precedent — Court Rules.

    The General Court Rules allow the existence of all conditions precedent to be pled generally but require that denials of conditions precedent be made with particularity (GCR 1963, 112.3).

2. Evidence — Depositions — Court Rules.

    The General Court Rules allow the use of a witness's deposition at trial under certain conditions and the burden is upon the party seeking its admission to prove its admissibility (GCR 1963, 302.4).

3. Trial — Attorney Fees — Court Rules.

    A trial court must make a finding that a party's allegations or denials were unwarranted before it may assess attorney fees under the court rule providing for attorney fees because of unwarranted allegations or denials (GCR 1963, 111.6).

*John R. Brennan* and *David L. Park,* for plaintiffs.

*Parker & Parker,* for defendants.

Before: M. J. Kelly, P.J., and Bronson and R. M. Daniels,* JJ.

M. J. Kelly, P.J. Defendants Earl Kline and Frances Kline appeal as of right a March 3, 1980, judgment and order of the trial court, awarding to the plaintiffs $17,281.33 plus interest on a promissory note executed by the defendants. The defendants also seek review of that aspect of the judgment awarding the plaintiffs an additional $10,486.14, allegedly representing the plaintiffs' litigation expenses and costs, including attorney fees.

In late 1971 or early 1972, Edwin L. Stewart entered into negotiations to purchase 103 acres of land in Arizona known as the Stegenga property. At the conclusion of these negotiations, a purchase

---

* Circuit judge, sitting on the Court of Appeals by assignment.

price of $200,000 was agreed upon, for which a $24,000 down payment was required. Stewart, who was employed as a real estate salesman for Earl Kline Real Estate, did not have sufficient funds to make the down payment at that time. To conclude the purchase, Stewart arranged to borrow money for the down payment from defendant Earl Kline and Erna Jaerling, another salesperson working in the Kline office. Stewart then purchased the property on a land contract and assigned one-third interests in the property to Earl Kline and Ms. Jaerling respectively.

In November of 1972, the Stegengas began forfeiture proceedings when payments on the land contract were in default. On December 8, 1972, the Stegengas mailed a notice of forfeiture to Stewart, demanding accelerated payment of the purchase price as a condition of refraining from the forfeiture. Stewart and Jaerling were unable to pay their share of the balance remaining on the contract and agreed to sell their interests to Kline for $10,000 each. Stewart later changed his mind and demanded payment in full for all monies he had contributed to the project. Kline and his wife, the named defendants, and Ms. Jaerling agreed to execute a joint promissory note for $17,281.33, payable to Edwin L. Stewart and his then wife, Margie E. Stewart. The note, as prepared by Stewart, required payment of the promissory note to be made from proceeds of the sale of the Stegenga property. The note was dated January 11, 1973, and provided in pertinent part:

"For value received the undersigned promises to pay to the order of EDWIN L. STEWART and MARGIE E. STEWART, his wife, the sum of $17281.33 DOLLARS.

"Said sum shall be paid by the undersigned in lawful money of the United State *[sic]* of America as follows:

136 108 Mich App 133 [July

"The aforesaid sum shall be paid from the first NET PROFIT made from sales of Land described [herein] * * * *Said Net Prifit* [sic] *shall be after all exspense* [sic] *of developing said parcel of land, is paid in full.*
"*THIS NOTE SHALL BEAR NO INTEREST, AND* [sic] *PAYABLE ONLY FROM PROFITS RECEIVED FROM ABOVE DESCRIBED PARCELS OF LAND.*" (Emphasis added.)

As consideration for the note, Edwin and Margie E. Stewart executed a quit-claim deed transferring their interests in the Stegenga property to the named defendants and Erna Jaerling. The deed recited consideration of $17,281.33. Following execution of the promissory note, defendant Earl Kline completed payment of the original Stegenga land contract and the land was divided into 13 separate parcels. The parcels were sold for a total of $383,000.

On October 19, 1978, Edwin Stewart filed this action in Livingston County Circuit Court, alleging that the defendants had failed to pay him the $17,281.33 owing on the promissory note despite a demand for payment and despite the fact that Earl Kline had made a net profit on the sale of the Stegenga property. On December 6, 1978, defendants filed their answer to Stewart's claim[1] and alleged as affirmative defenses (1) that the instrument was not supported by consideration, and (2) that the instrument was not, in fact, a promissory note.

At the conclusion of defendant's proofs following a nonjury trial, plaintiffs made a motion for summary judgment, which the court interpreted as a motion for directed verdict. GCR 1963, 515.1. The court, in an oral opinion, found the defendants'

[1] The defendants' answer neither admitted nor denied the plaintiffs' specific allegations, but left the plaintiffs to their proofs.

affirmative defenses not proved and awarded the plaintiffs a judgment equal to the promissory note's face value. The court also awarded to the plaintiffs their "actual costs of litigation", which were determined to be $10,486.14. From the judgment and assessment of costs so entered, the defendants appeal and raise three issues.

I

The defendants first allege that the lower court misallocated the burden of proof regarding a condition precedent to collection on the promissory note; specifically, that the plaintiffs were not required to show the amount and fact of net profits after payment of development costs in accord with the terms of the note. The plaintiffs argue that the limited proofs introduced at the trial of this cause were sufficient, in light of the failure of defendants to deny in their answer the plaintiff's claim that all conditions were satisfied.

The pertinent rule regarding pleading a condition precedent is GCR 1963, 112.3, which provides:

"Conditions Precedent. In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

The specific requirements of this rule have been discussed in 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 239:

"This rule should not be understood as meaning that there is no necessity for alleging performance or occurrence of conditions precedent. On the contrary the pleader must make such allegations, though 'it is suffi-

cient to aver generally that all conditions precedent have been performed or have occurred.' In most cases there will be no issue taken with these general allegations, but if an issue is to be made the burden is upon the defendant to raise it by a specific denial. Since the denial of performance or occurrence must be made 'specifically and with particularity,' federal decisions under the same rule have held that a general denial of an allegation of performance of conditions precedent does not put in issue the question of performance of conditions precedent. See 1A Barron & Holtzoff, Federal Practice and Procedure, § 304.

"The requirement that defendant must raise the issue of performance of conditions precedent by specific denial does not, however, shift the burden of proof. When the issue has been properly raised by specific denial, plaintiff has the burden of showing that performance or occurrence has been satisfied in the particular aspect denied by defendant."

In *Abbey v Hudgens,* 4 Mich App 621, 627; 145 NW2d 363 (1966), this Court also discussed the requirements of the rule in the context of a case alleging error in the trial court's denial of a motion to amend the defendant's pleadings, made at the beginning of the trial. The defendant, who had entered into an exclusive sales agreement with plaintiff realtor, sought to amend the pleadings to permit defendant to claim the agreement never took effect. The basis for this additional claim would have been that the defendant's wife, part owner of the property to be listed, never signed the listing agreement. The Court discussed the effect of defendant's failure to plead this failure of a condition precedent, in conjunction with a properly raised affirmative defense based on the statute of frauds:

"In the light of the wording of the court rule [GCR 1963, 112.3], as well as the facts discussed previously, it

can be said that pleading the statute of frauds put plaintiff on notice that defendant was prepared to prove that no valid contract existed between the parties because a necessary signature was lacking; however, it cannot be said that defendant sufficiently put plaintiff on notice that he was prepared to prove that the contract which otherwise would have been valid as between the parties was unenforceable because a 'condition precedent'—namely, that defendant's wife did not sign the listing agreement—was not fulfilled. A failure to make a specific averment of nonoccurrence of a condition precedent in a case such as we have before us 'would be likely to take the adverse party by surprise.' GCR 1963, 111.7. The court properly denied the amendment requested by the defendant at trial, under GCR 1963, 118.3, since the defendant did not satisfy the court that the proofs sought to be admitted and the amendment of pleadings to conform to such proofs would not prejudice the objecting party in maintaining his action or defense upon the merits."

We believe that the defendants' failure to raise the issue of the plaintiffs' burden to prove conditions precedent is fatal to their claim of trial court error. As in *Abbey,* to require the plaintiffs to offer specific proofs on the question even after the defendants failed to raise this defense would likely take the plaintiffs by surprise at trial. GCR 1963, 111.7. The defendants' response to the plaintiffs' general averment that all conditions precedent had been performed, in which the defendants neither admitted nor denied the allegation due to a lack of information, would have constituted a sufficient denial of the general claims in the original complaint. GCR 1963, 111.4. However, it is clear that denial of claimed conditions precedent requires greater specificity to place the matter in issue at trial. The proofs offered by the plaintiffs at trial, showing the original purchase and subsequent sale prices of the parcel and the disputed

promissory note, were thus sufficient to support the lower court's conclusion. Especially is this true when the records of all transactions were defendants'.

## II

The defendants next allege reversible error arising from the trial court's decision not to admit defendant Earl Kline's deposition at trial. The deposition was offered in conjunction with the claim that Kline had been detained in Florida to undergo surgery to remove a growth on one of his ears. The deposition transcript was offered pursuant to GCR 1963, 302.4, which provides in pertinent part:

"Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any 1 of the following provisions:

\* \* \*

"(3) The deposition of a witness, whether or not a party, when properly filed in accordance with subrule 306.6(1) or subrule 307.2, may be used by any party for any purpose if the court finds: \* \* \* [3] that the witness is at a greater distance than 50 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or [4] that the witness is unable to attend or testify because of age, sickness, insanity, infirmity, or imprisonment \* \* \*."

We begin our analysis of this issue by noting that appellate review of a trial court's decision on the admissibility of depositions is limited to a determination of whether the court abused its

discretion. *Socha v Passino,* 405 Mich 458, 471; 275 NW2d 243 (1979).[2] Further, the burden of establishing admissibility rests on the party seeking admission of the deposition. *Childress v Jubelt,* 45 Mich App 181; 205 NW2d 889 (1973).

Our review of the evidence offered in support of the admission of the deposition discloses that the defendants did not sustain their burden of proving circumstances warranting admission. The testimony offered by defendant Kline's son disclosed that defendant was in Florida prior to trial and had some treatment of a skin condition on this ear. However, it is apparent that the condition was not serious or debilitating. Additionally, the record offers only the self-serving affidavit of defendant Kline, submitted after trial in support of a motion for new trial, regarding whether Kline's surgery could have been postponed until after the trial. Based upon this lack of evidence supporting the use of Kline's deposition, we hold that the trial court did not abuse its discretion in denying admission of the deposition at trial. The trial court was unconvinced that defendant Earl Kline was suffering from any debilitating illness. The defendant's attorney had listed Mr. Kline on the pretrial witness list and the court stated that notice of Kline's absence was not given until the second day of trial, and there was some suspicion fully articulated by the court that the absence of the witness was procured by the party offering the

[2] In *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959), an oft-quoted definition of abuse of discretion was stated:

"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. So tested, we perceive no error in the proceedings below nor in the determination made."

deposition. We are not convinced that a mistake was made.

## III

The defendants finally allege that the trial court erred in awarding to the plaintiffs their costs of litigation, amounting to $10,486.14, pursuant to GCR 1963, 111.6:

"Unwarranted Allegations and Denials. If it appears at the trial that any fact alleged or denied by a pleading ought not to have been so alleged or denied and such fact if alleged is not proved or if denied is proved or admitted, the court may, if the allegation or denial is unreasonable, require the party making such allegation or denial to pay to the adverse party the reasonable expenses incurred in proving or preparing to prove or disprove such fact as the case may be, including reasonable attorney fees."

The defendants' claim regarding this issue is twofold. Initially, it is alleged that the trial court entered the order awarding costs without making the required finding that the defendants' denials were "unreasonable". Second, it is argued that the lower court erred by including in the total of costs awarded a $9,000 figure for attorney fees. The rationale behind this claim is that the $9,000 fee represented a contingent fee agreement between the plaintiffs and their attorneys, and had no relation to expenses incurred due to unreasonable denials in the defendants' pleadings. We agree with both aspects of the defendants' claims.

In previous cases, we have noted the intent of GCR 1963, 111.6 "to impose realistic costs, including actual attorney fees, as a deterrent to bad faith pleading". *Flanagan v General Motors Corp,* 95 Mich App 677, 683; 291 NW2d 166 (1980),

quoting 1 Honigman & Hawkins, *supra* (1979 Supp), p 70. The *Flanagan* panel also held that the rule's penalty provision should be applied liberally in cases where bad faith pleading is found. *Id.* Our review is again governed by the abuse of discretion standard. *Forster v City of Pontiac,* 56 Mich App 415, 422; 224 NW2d 325 (1974).

In this case, the plaintiffs did not offer, and we are unable to isolate, any evidence pertaining to the specific portion of attorney fees and other costs incurred solely to prove facts denied unreasonably or in bad faith. The lower court apparently applied the plaintiffs' claim of $9,000 in attorney fees to the total of costs awarded, as though the entire liability for such fees was the direct result of bad faith pleading by the defendants.

Although the question of attorney fees and costs under this court rule is vested in the trial court, we do not view this discretion as permitting the court to award contingent fees unrelated to evidence of unreasonable allegations or denials. *Lindhout v Ingersoll,* 58 Mich App 446, 454; 228 NW2d 415 (1975) (denial of attorney fee award sustained where record did not support claim of unwarranted denials). See also *Salvador v Connor,* 87 Mich App 664, 678-680; 276 NW2d 458 (1978) (M. J. KELLY, J., dissenting). ("In the absence of any support in the record for the conclusion that defendants' attorneys' conduct warranted the award of attorneys' fees, the award was patently erroneous.")[3] In the instant case, the trial court

---

[3] In dicta, this Court's decision in *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 75, fn 2; 212 NW2d 821 (1973), addressed the further requirement that a trial court make findings of fact as to the rule's criteria before awarding attorney fees:

"It appears that State Farm, et al., might have sought on the basis of this rule an allowance of reasonable expenses, including reasonable attorneys' fees, incurred in proving or preparing to prove or disprove facts in this case. However, they did not seek relief on this ground,

stated the following conclusion after summarizing the pleadings and testimony submitted:

"I am of the opinion, Mrs. Parker, that your clients put you in a bad spot, a very bad spot, by having you file the answer that you filed denying each and everything and not admitting it at the same time and leaving the plaintiffs to their proofs, and then not even showing up at the trial.

"I am setting attorney fees, costs and expenses under Rule 111 in the amount of $10,486.14 as paid for by the plaintiffs. In fact, I have an order to that effect right now. I will fill in the amount."

We do not view these findings as sufficient to uphold the award of $9,000 in attorney fees entered below and therefore hold the amount of award of gross costs was an abuse of the court's discretion. A plain reading of GCR 1963, 111.6 discloses that a finding of an unreasonable allegation or denial, in light of the evidence at trial, must be made prior to ordering the award. In this case, the lower court made no such finding. We thus remand the case to the trial court for further proceedings on this issue. On remand, the lower court shall hear additional evidence or arguments pertaining to the criteria in GCR 1963, 111.6 and make the required findings before imposing an award of costs or attorney fees.

Affirmed in part, reversed in part and remanded.

and there is no finding by the judge that allegations or denials of Dodds and Kendall 'ought not to have been so alleged or denied' and were 'unreasonable'. In the only cases where such allowances have been sustained, there were appropriate findings of the judge in accordance with the criteria spelled out in the court rule. See *Fredal v Forster,* 9 Mich App 215, 238; 156 NW2d 606, 617 (1967); *Harvey v Lewis (In re Disqualification of Judge),* 10 Mich App 23, 30-33; 158 NW2d 809, 813-814 (1968)."