## VISSER v VISSER

Docket Nos. 301864 and 305900. Submitted August 7, 2012, at Grand Rapids. Decided December 18, 2012, at 9:00 a.m. Leave to appeal sought.

Heather Lynn Visser was granted an ex parte personal protection order (PPO) under MCL 600.2950 against her husband, Donovan J. Visser, in the Kent Circuit Court, Family Division, Nanaruth H. Carpenter, J., on the basis of evidence that had been presented at a hearing before a referee. Petitioner was subsequently granted two extensions of the PPO, the last of which expired on July 19, 2011. Respondent's motions to terminate each of these orders were denied. Respondent separately appealed the original order and its extensions, and the appeals were consolidated.

The Court of Appeals *held*:

1. Respondent's arguments pertaining to the extensions of the PPOs were moot. An issue that will continue to have collateral consequences is not moot. While issues relating to the propriety of the initial PPO entry were not moot because having a PPO on one's record might have some adverse consequences, there were no conceivable collateral consequences that respondent might have suffered arising solely out of the duration of the PPO. Therefore, there was no relief that could be provided to respondent for any possible impropriety in the extensions.

2. The delegation of the evidentiary hearing for the initial PPO to a referee was authorized by the court rules. Under MCL 552.507(2)(a), a referee is authorized to hear all motions in a domestic relations matter, except motions pertaining to an increase or decrease in spousal support, referred to the referee by the court. MCL 552.507 is part of the Friend of the Court Act (FCA), MCL 552.501 *et seq.*, which defines "domestic relations matter" in MCL 522.502(m) as a circuit court proceeding as to child custody, parenting time, child support, or spousal support that arises out of litigation under a statute of this state, including, but not limited to, certain enumerated statutory provisions. Although MCL 522.502(m) does not mention MCL 600.2950, the domestic relations PPO statute pursuant to which the instant PPO was issued, MCL 600.2950 unambiguously applies to domestic relations cases. MCR 3.201(A) explains that subchapter 3.200, within which MCR

3.215(B) permits specified types of domestic relations motions to be heard initially by a referee, applies to actions for divorce, separate maintenance, the annulment of marriage, the affirmation of marriage, paternity, family support under MCL 552.451 *et seq.*, the custody of minors under MCL 722.21 *et seq.*, and visitation with minors under MCL 722.27b, and to proceedings that are ancillary or subsequent to the actions listed in MCR 3.201(A)(1) and that relate to the custody of minors, visitation with minors, or the support of minors and spouses or former spouses. "Relate" means to have reference or relation to. Because PPO proceedings between individuals who have a minor child in common had reference or relation to custody or visitation proceedings, a referee was authorized to conduct the initial PPO hearing. Furthermore, subchapter 3.700 of the court rules indicated that PPOs related to existing custody and parenting time orders.

3. The trial court's referral of the PPO hearing to a referee was not an unconstitutional delegation of authority. Judicial power is not improperly delegated as long as the ultimate decision-making responsibility remains with a judge. The trial court signed the challenged orders and the orders were entered under the trial court's authority, not that of the referee. Because the referee made no final binding order or adjudication and was authorized by statute to conduct PPO hearings relating to child custody and visitation, the referee did not exercise judicial power.

4. The trial court's failure to hold a hearing within 14 days of respondent's motion to terminate the PPO as required by MCL 600.2950(14) and MCR 3.707(A)(2) did not require the automatic dismissal of the PPO. The stated time for performance set forth in a statute should be viewed as directory, rather than mandatory, if there is no language precluding or terminating performance after the specified time, and neither MCL 600.2950 nor MCR 3.707 contains any provision suggesting that the failure to hold a timely hearing on a motion to terminate a PPO results in the automatic termination of the PPO.

5. The initial petition for an ex parte PPO was not facially invalid. An ex parte PPO is properly entered if a petitioner demonstrated a reasonable apprehension of violence. Respondent's threats and visible displays of anger that left petitioner frightened were a sufficient basis for the trial court to issue an ex parte PPO. Further, respondent's history of recent threats demonstrated that immediate or irreparable injury, loss, or damage could result from delay in issuing the PPO. Therefore, the trial court did not abuse its discretion by granting an ex parte PPO on the basis of the initial petition.

6. The order granting the initial PPO was not required to contain the reasons for the issuance of the order under MCR 3.705(A)(2) because that court rule applies only to proceedings under MCL 600.2950a and the PPO at issue was based on MCL 600.2950.

Affirmed.

SHAPIRO, J., dissenting, would have remanded the case to the trial court for it to vacate the PPO on the ground that the referee lacked the authority to conduct PPO hearings because this was not a proceeding as to child custody, parenting time, child support, spousal support, or visitation, and therefore was not a domestic relations action under the definitions provided in the FCA and the domestic relations subchapter of the court rules.

1. INJUNCTIONS — PERSONAL PROTECTION ORDERS — EXTENSIONS OF PERSONAL PROTECTION ORDERS — MOOTNESS.

   An issue that will continue to have collateral consequences is not moot; challenges to the initial granting of a personal protection order that has expired is not necessarily moot; challenges to the extension of a personal protection order that has expired are moot if there are no conceivable collateral consequences that arose solely out of the duration of the personal protection order.

2. INJUNCTIONS — PERSONAL PROTECTION ORDERS — EVIDENTIARY HEARINGS — REFEREES.

   MCL 552.507 provides that the chief judge of a circuit court may designate a referee as provided by the Michigan Court Rules to hear all motions in a domestic relations matter except motions pertaining to an increase or decrease in spousal support; petitions for personal protection orders pursuant to MCL 600.2950 are domestic relations matters for which a referee may be directed to hear the initial motions under MCL 552.507 and MCR 3.215(B).

3. CONSTITUTIONAL LAW — DELEGATION OF JUDICIAL AUTHORITY — INJUNCTIONS — PERSONAL PROTECTION ORDERS — EVIDENTIARY HEARINGS — REFEREES.

   Judicial power is not improperly delegated to a referee as long as the ultimate decision-making responsibility remains with a judge; a court's referral of a hearing on a motion for a personal protection order to a referee is not an unconstitutional delegation of authority under Const 1963, art 6, § 1.

4. INJUNCTIONS — PERSONAL PROTECTION ORDERS — MOTIONS TO MODIFY, RESCIND, OR TERMINATE PERSONAL PROTECTION ORDERS — FAILURE TO TIMELY SCHEDULE A HEARING.

   A court's failure to schedule a hearing on a motion to modify,

rescind, or terminate an ex parte personal protection order within 14 days after the motion was filed as required by MCL 600.2950(14) and MCR 3.707(A)(2) does not require the automatic dismissal of the personal protection order.

5. INJUNCTIONS — PERSONAL PROTECTION ORDERS — STATEMENT OF REASONS FOR ISSUING PERSONAL PROTECTION ORDERS.

MCR 3.705(A)(2) requires a court that issues a personal protection order under MCL 600.2950a to state in writing the specific reasons for issuing the order; this requirement does not apply to personal protection orders issued under MCL 600.2950.

*Joseph S. Smigiel, Jr.*, for petitioner.

*Visser and Associates, PLLC* (by *Donald R. Visser* and *Donovan J. Visser*), for respondent.

Before: MARKEY, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. In this consolidated appeal, stemming from one underlying case, respondent, Donovan J. Visser, raises a number of challenges to the personal protection order (PPO) entered against him. We conclude that the original PPO was properly issued. Therefore, we affirm.

Respondent's wife, Heather Lynn Visser, filed a petition for a "domestic relationship" PPO, MCL 600.2950, against respondent on January 27, 2010. The petition was granted, and orders extending the PPO were subsequently entered on July 16, 2010, and January 18, 2011. The PPO expired on July 19, 2011. Respondent filed motions to terminate each order. His first motion was denied after a hearing. The latter motions were denied without hearings.

We agree with respondent that the issue of the propriety of the initial PPO entry is not necessarily moot. An issue that will continue to have collateral

consequences is not moot, and this Court has previously held that an expired PPO may, in fact, have collateral consequences. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). We note that respondent does not actually articulate what collateral consequences are likely to befall him. Ordinarily, we do not believe it is the duty of this Court to contemplate potential collateral consequences for a party. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). But we do not doubt that having a PPO on one's record may have some adverse consequences. In contrast, any of the challenges respondent brings to the *extensions* of the PPO, as distinct from its initial entry, *are* moot. The last extension of the PPO has expired, and we are unable to conceive of any possible collateral consequences that respondent might suffer arising solely out of the duration of the PPO. Therefore, there is no relief this Court could provide to respondent for any possible impropriety in the extensions. Because they are moot, we decline to consider any of respondent's arguments pertaining to the extensions. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

With respect to the initial entry of the PPO, respondent first argues that the delegation of the evidentiary hearing to a referee was not authorized by the court rules. Statutory interpretation and construction of court rules are questions of law subject to review de novo. *Ballard v Ypsilanti Twp*, 216 Mich App 545, 549; 549 NW2d 885 (1996); *Bruwer v Oaks (On Remand)*, 218 Mich App 392, 397; 554 NW2d 345 (1996).

MCL 552.507 is part of the Friend of the Court Act (FCA), MCL 552.501 *et seq.* MCL 552.507(2)(a) allows a referee to "[h]ear all motions in a domestic relations matter, except motions pertaining to an increase or

decrease in spouse support, referred to the referee by the court." The FCA defines "domestic relations matter" as

> a circuit court proceeding as to child custody, parenting time, child support, or spousal support, that arises out of litigation under a statute of this state, including, *but not limited to*, the following:
>
> (*i*) 1846 RS 84, MCL 552.1 to 552.45.
>
> (*ii*) The family support act, 1966 PA 138, MCL 552.451 to 552.459.
>
> (*iii*) The child custody act of 1970, 1970 PA 91, MCL 722.21 to 722.31.
>
> (*iv*) 1968 PA 293, MCL 722.1 to 722.6.
>
> (*v*) The paternity act, 1956 PA 205, MCL 722.711 to 722.730.
>
> (*vi*) The revised uniform reciprocal enforcement of support act, 1952 PA 8, MCL 780.151 to 780.183.
>
> (*vii*) The uniform interstate family support act, 1996 PA 310, MCL 552.1101 to 552.1901. [MCL 552.502(m)(*i*) to (*vii*) (emphasis added).]

Thus, MCL 552.502(m) enumerates a number of statutory provisions, litigation arising out of which will be considered "domestic relations matters." MCL 552.502(m) explicitly states that matters that will be considered "domestic relations matters" are "not limited to" that list. By its own terms, therefore, the list is not exclusive. "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire and Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Interestingly, MCL 552.502(m) does not mention MCL 600.2950, the domestic relations PPO statute pursuant to which the instant PPO was issued, which unambiguously applies to domestic relations cases. See

MCL 600.2950(1) (providing that a court may enter a PPO against "a spouse, a former spouse, an individual with whom he or she has had a child in common, . . . or an individual residing or having resided in the same household as the petitioner"). Likewise, the domestic violence prevention and treatment act, MCL 400.1501 *et seq.*, clearly also implicates domestic relations, as does the domestic assault statute, MCL 750.81a(2).

MCR 3.215 implements MCL 552.507 and provides further guidance for the conduct of referee hearings. MCR 3.201(A) explains that "[s]ubchapter 3.200," within which MCR 3.215(B) permits "specified types of domestic relations motions [to] be heard initially by a referee," applies to:

> (1) actions for divorce, separate maintenance, the annulment of marriage, the affirmation of marriage, paternity, family support under MCL 552.451 *et seq.*, the custody of minors under MCL 722.21 *et seq.*, and visitation with minors under MCL 722.27b and to
>
> (2) proceedings that are ancillary or subsequent to the actions listed in subrule (A)(1) and that relate to
>
> (a) the custody of minors,
>
> (b) visitation with minors, or
>
> (c) the support of minors and spouses or former spouses.

The phrase "relate" is not defined by the court rule, nor could we find binding precedent interpreting the relevant provisions; therefore, it is proper to consult a dictionary. See *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 485; 637 NW2d 232 (2001). "Relate" is defined in relevant part to mean "to have reference or relation (often [followed] by *to*)." *Random House Webster's College Dictionary* (1997).

It is clear, bordering on axiomatic, that PPO proceedings between individuals who have a minor child in

common "have reference or relation" to custody or visitation proceedings. Therefore, a referee is authorized to conduct a hearing. Subchapter 3.700 expressly indicates how a PPO relates to existing custody and parenting time orders. MCR 3.706(C)(1) requires the court issuing the PPO to "contact the court having jurisdiction over the parenting time or custody matter as provided in MCR 3.205, and where practicable, the judge should consult with that court, as contemplated in MCR 3.205(C)(2), regarding *the impact upon custody and parenting time rights* before issuing the personal protection order." (Emphasis added.) The rule plainly refers to the custody of minor children and appears to recognize that a PPO may relate to an already entered custody or parenting time order. This interpretation is further reinforced by MCR 3.706(C)(2), which provides:

> If the respondent's custody or parenting time rights will be adversely affected by the personal protection order, the issuing court shall determine whether conditions should be specified in the order which would accommodate the respondent's rights or whether the situation is such that the safety of the petitioner and minor children would be compromised by such conditions.

Further, MCR 3.706(C)(3) provides that a PPO "takes precedence over any existing custody or parenting time order until" the PPO expires or until "the court having jurisdiction over the custody or parenting time order modifies the custody or parenting time order to accommodate the conditions of the personal protection order." The foregoing language appears to establish that a PPO proceeding may relate to a matter involving custody or visitation. MCR 3.201(A)(2).

Further, while not directly addressing the issue, this Court in several unpublished opinions has noted, without critical comment, that a referee conducted a PPO

hearing. We remind the bench and bar that unpublished opinions are not binding, MCR 7.215(C)(1). Nevertheless, this Court *may* consider them to be persuasive. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004). For the sake of completely addressing the parties' arguments, we recognize that respondent claims that *Baker v Holloway*, unpublished opinion per curiam of the Court of Appeals issued January 26, 2010 (Docket No. 288606), supports his argument that a referee cannot conduct a PPO hearing. Even if *Baker* were considered binding, respondent would be incorrect. The *Baker* Court concluded that a referee could not order the parties to mediation and that the court was required to conduct a hearing; by necessary implication, *Baker* actually held that the referee *could* have properly conducted the hearing. Therefore, respondent's reliance on *Baker* is doubly misplaced.

Respondent's second argument is that the trial court's referral of the PPO hearing to a referee, even if authorized by statute or court rule, was an unconstitutional delegation of authority. Our Supreme Court has held that judicial power is not improperly delegated as long as the ultimate decision-making responsibility remains with a judge. See *Underwood v McDuffee*, 15 Mich 361, 368-370 (1867); *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich 254, 258; 98 NW2d 586 (1959) (" 'The judicial power referred to is the authority to hear and decide controversies, and to make binding orders and judgments respecting them.' "), quoting *Risser v Hoyt*, 53 Mich 185, 193; 18 NW 611 (1884). In this case, the trial court signed the challenged orders, and the orders were entered under the trial court's authority, not that of the referee. Because a referee makes no final binding order or adjudication and the referee was authorized by statute to conduct PPO hearings relating to child custody and visitation as

discussed earlier, the referee does not exercise judicial power. Therefore, respondent's argument that the trial court unconstitutionally delegated its authority is incorrect.

Respondent next argues that the failure of the trial court to hold a hearing within 14 days of his motion to terminate the PPO should automatically result in dismissal of the PPO. MCL 600.2950(14) provides, in relevant part, that "the court shall schedule a hearing on the motion to modify or rescind the ex parte personal protection order within 14 days after the filing of the motion to modify or rescind." See also MCR 3.707(A)(2). However, the stated time for performance set forth in a statute should be viewed as directory, rather than mandatory, when there is no language precluding or terminating performance after the specified time. *In re Forfeiture of Bail Bond*, 276 Mich App 482, 494-495; 740 NW2d 734 (2007). In this case, neither the statute nor the court rule contains any provision suggesting that the failure to hold a timely hearing on a motion to terminate a PPO results in the automatic termination of the PPO. Indeed, such a rule would punish the person who sought the PPO for the tardiness of the court itself, over which the parties have little, if any, control, and would potentially undermine the purpose of PPOs altogether.

Respondent next argues that the January 27, 2010, petition for an ex parte PPO was facially invalid. Petitioner's affidavit stated she was afraid of respondent and had been "threatened by him for over a year." The affidavit reflected that respondent had recently attempted to commit suicide and that there had been a "struggle to get a gun from the basement" of the parties' residence. At a meeting with the parties' pastor following the suicide attempt, respondent indicated he

was not certain what he would have done if he had obtained the gun. Petitioner stated that his response "felt very much like intimidation" and made her "very scared." Additionally, the affidavit reflected that petitioner frequently told respondent she was afraid of him when he was angry, and in response to these comments, respondent told petitioner, "[Y]ou haven't seen me angry." The day before petitioner sought the PPO, respondent called her while she was at her mother's house and threatened her.

An ex parte PPO is properly entered if the petitioner demonstrates a " 'reasonable apprehension of violence.' " *Pickering v Pickering*, 253 Mich App 694, 701; 659 NW2d 649 (2002), quoting MCL 600.2950(1)(j). Respondent's threats and visible displays of anger that left petitioner frightened were a sufficient basis for the trial court to issue an ex parte PPO. See *id.* at 702. Further, the history of recent threats, including the day before the petition was filed, was sufficient to justify an ex parte order because the affidavit demonstrated that "immediate and irreparable injury, loss, or damage" could result from delay in issuing the PPO. MCR 3.705(A)(2); see also *Kampf v Kampf*, 237 Mich App 377, 385; 603 NW2d 295 (1999). The trial court did not abuse its discretion by granting an ex parte PPO on the basis of the January 27, 2010, petition.

Respondent also objects that the order granting the January 27, 2010, PPO did not contain the reasons for the issuance of the order, citing MCR 3.705(A)(2). That court rule states in part, "In a proceeding under MCL 600.2950a, the court must state in writing the specific reasons for issuance of the order." Respondent fails to note that MCL 600.2950a was not the basis for the PPO in the present case. MCL 600.2950a governs PPOs issued for stalking. Instead, MCL 600.2950 was the

basis for the PPO because it involved a spouse and a child in common. The plain language of MCR 3.705(A)(2) only requires written findings for "a proceeding under MCL 600.2950a"; consequently, this argument also fails.

Again, we decline to address any of respondent's arguments pertaining to the extensions of the PPO because that issue is moot.

Affirmed. Petitioner, being the prevailing party, may tax costs.

MARKEY, P.J., concurred with RONAYNE KRAUSE, J.

SHAPIRO, J. (*dissenting*). I respectfully dissent. Referees are not authorized by statute or court rule to conduct personal protection order (PPO) hearings.

It is axiomatic that referees may only be appointed if specific statutory authority permits it. *Lindhout v Ingersoll*, 58 Mich App 446, 453; 228 NW2d 415 (1975). In this case, the unambiguous language of the relevant statute does not provide such authority. Neither does the related court rule.

MCL 552.507(2)(a), part of the Friend of the Court Act (FCA), MCL 552.501 *et seq.*, allows a referee to "[h]ear all motions in a domestic relations matter, except motions pertaining to an increase or decrease in spouse support, referred to the referee by the court." "Domestic relations matter" is then defined by MCL 552.502(m) as

a circuit court proceeding *as to child custody, parenting time, child support, or spousal support,* that arises out of litigation under a statute of this state, including, but not limited to, the following:

(*i*) 1846 RS 84, MCL 552.1 to 552.45.

(*ii*) The family support act, 1966 PA 138, MCL 552.451 to 552.459.

(*iii*) The child custody act of 1970, 1970 PA 91, MCL 722.21 to 722.31.

(*iv*) 1968 PA 293, MCL 722.1 to 722.6.

(*v*) The paternity act, 1956 PA 205, MCL 722.711 to 722.730.

(*vi*) The revised uniform reciprocal enforcement of support act, 1952 PA 8, MCL 780.151 to 780.183.

(*vii*) The uniform interstate family support act, 1996 PA 310, MCL 552.1101 to 552.1901. [Emphasis added.]

The majority misreads this provision by emphasizing the use of the nonexclusive phrase "including, but not limited to" without considering what that phrase is modifying. The phrase allows for expansion of the list of statutes from which a domestic relations case may arise, but it does not expand the types of cases defined as domestic relations matters for the purposes of the act. Whatever statute the case arises under, the proceeding must still be one "as to child custody, parenting time, child support, or spousal support." If a statute defines a term, that definition controls, regardless of whether another definition is possible. *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007).

The PPO in this case was issued under MCL 600.2950, which governs protective orders between individuals who are married or share a child. While this statute may be broadly said to involve domestic relations because the parties are married or are parents of the same child, issuance of a PPO, in and of itself, is not a "proceeding as to child custody, parenting time, child support, or spousal support." Therefore, contrary to the majority's conclusion, MCL 552.502(m) does not provide a basis for the referee to hear petitioner's PPO request.

MCL 552.507(1) provides another possible source of statutory authority, as it allows the chief judge of a circuit to "designate a referee as provided by the Michigan court rules." As noted by the majority, MCR 3.215(B)(1) allows a chief judge to "direct that specified types of domestic relations motions be heard initially by a referee." Subchapter 3.200 of the court rules is titled "Domestic Relations Actions," and MCR 3.201(A) explains that this subchapter covers:

> (1) actions for divorce, separate maintenance, the annulment of marriage, the affirmation of marriage, paternity, family support under MCL 552.451 *et seq.*, the custody of minors under MCL 722.21 *et seq.*, and visitation with minors under MCL 722.27b and to
>
> (2) proceedings that are ancillary or subsequent to the actions listed in subrule (A)(1) and that relate to
>
> (a) the custody of minors,
>
> (b) visitation with minors, or
>
> (c) the support of minors and spouses or former spouses.

The majority misreads this provision as well, erring in a similar manner as it did in its analysis of the FCA. MCR 3.201(A) states that subchapter 3.200 covers several specific types of actions and any other action relating to custody, visitation, or support *but only if* that action is ancillary or subsequent to one of the actions listed in subrule (A)(1). The PPO proceedings in this case are not part of an action for divorce, separate maintenance, annulment, paternity, child support, custody, or visitation. Further, the proceedings are not ancillary or subsequent to any such action.

The majority claims that PPO actions between individuals who share a minor child necessarily relate to the custody and visitation of minors and that MCR 3.201(A)(2) therefore allows a referee to hear these

PPO cases. That these matters are related in a general sense is, however, irrelevant. If a proceeding is not an action for divorce, separate maintenance, annulment, paternity, child support, custody, or visitation and is not ancillary or subsequent to any such action, it is not governed by subchapter 3.200 of the court rules. For example, a criminal case may severely affect an individual's custody or visitation rights, but it is not governed by subchapter 3.200. Similarly, because the present case is not one of the types of actions listed in MCR 3.201(A)(1) and is not ancillary to any such action, it would not be governed by subchapter 3.200 even if it had some effect on respondent's visitation rights (which the PPO in this case explicitly disavows). Therefore, the court rules do not authorize a referee to hear a PPO request under these circumstances.

Because this was not a domestic relations action under the explicit definitions provided in the FCA or the domestic relations subchapter of the court rules, the referee lacked the authority to conduct PPO hearings. I would therefore remand this case to the trial court for it to vacate the PPO. I express no opinion regarding the merits of the PPO or its extensions.