ANNETT *v.* STOUT.

1. VENDOR AND PURCHASER—RESCISSION OF LAND CONTRACT—ABANDONMENT.

   Conduct on the part of both the vendor and purchaser which is inconsistent with the continuance of the contract of sale constitutes rescission by abandonment.

2. SAME—ABANDONMENT.

   Rights of either party under a contract for sale of land may be lost by abandonment and it is not necessary that relinquishment be in writing as an abandonment may be deduced from circumstances or course of conduct (3 Comp. Laws 1929, § 13411).

3. SAME—ABANDONMENT—EVIDENCE.

   In suit to obtain an undivided one-half vendee's interest in property in which plaintiff and defendant husband, partners,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 55 Am. Jur., Vendor and Purchaser, § 579.

had been owners of the vendee interest until they became insolvent, where it appears defendant husband returned the vendees' copy of the contract to the vendor, defendant wife executed a new contract with the unpaid instalments as the principal sum and also agreed to pay back taxes and no payments under the contract were made by plaintiff for over 10 years after he knew of the situation following termination of the partnership and his own release from the contract, finding that plaintiff had abandoned the contract is required, especially where it appears the vendor had acquiesced in abandonment by plaintiff.

4. SAME—FRAUD—EVIDENCE.

Burden of proof on plaintiff partner's claim that defendant partner had caused the vendees' copy of land contract to be returned to the vendor and a new contract taken out in name of latter partner's wife fraudulently and without plaintiff's knowledge *held*, not to have been substantiated in suit to obtain an undivided one-half vendee's interest.

5. SAME—GOOD FAITH PURCHASER—INSOLVENCY OF VENDEES.

Defendant wife *held*, a bona fide vendee under land contract replacing one in which plaintiff and defendant husband, as partners, had been owners of the vendee interest until their insolvency.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—LACHES.

Where defendant wife is found to be a bona fide vendee under land contract supplanting that in which plaintiff and defendant husband, as partners, had owned the vendee interest, defendants' contention that because plaintiff had waited 10 or 12 years before bringing suit, he was guilty of laches is not considered on appeal.

Appeal from Oakland; Richter (Theodore J.), J., presiding. Submitted June 8, 1948. (Docket No. 17, Calendar No. 43,982.) Decided October 4, 1948. Rehearing denied November 12, 1948.

Bill by Roy Annett against Edward M. Stout and Grace Stout for restoration of lost contract and to establish a one-half interest in real estate. Decree for plaintiff. Defendants appeal. Reversed and bill dismissed.

*Carlton H. McIntyre* and *Ralph Becker,* for plaintiff.

*Howlett & Hartman,* for defendants.

NORTH, J. This is an appeal by defendants Stout from a decree of Oakland county circuit court in chancery by which the court, on the theory of restoration of a lost or misappropriated contract, vested in plaintiff Annett a one-half interest as a vendee in a land contract for the purchase of real estate in the city of Pontiac, Michigan. The property is described as lot # 8 and the north 20 feet of lot #7, original plat of the city of Pontiac, the same being known as the Lee Hotel property.

The bill of complaint was filed November 1, 1945. In addition to the appellants herein the Davis Investment Company, which was a Michigan corporation and the vendor in the land contract, was also made a defendant. However as the case came to trial the suit as against this corporation was dismissed with consent of plaintiff's counsel and without objection by appellants.

In October, 1918, the Davis Investment Company entered into a land contract as vendor for the sale of the Lee Hotel property, for the sum of $15,075 payable in monthly instalments of $125. Plaintiff Roy Annett and defendant Edward M. Stout obtained the vendee's interest in the above land contract in 1926. At that time there was unpaid on the contract purchase price of $9,183.44. Annett and Stout assumed the obligation of making the contract payments and did make payments until 1929, when, owing to the depression, they became in default in making the payments. Thereupon the monthly payments were reduced to $35, but by 1932 the vendees were further in default both in payment of contract instalments and in payment of taxes.

as required by the contract. In fact by 1932 both Annett and Stout were badly involved financially and were insolvent. Annett was indebted to the Pontiac Commercial & Savings Bank in the amount of $87,202.25. Edward M. Stout was also heavily indebted to the same bank, which in September, 1938, obtained a judgment against both Stout and Annett for $10,177.32, and later execution was levied by the bank on the property involved in the instant case. By 1932, owing to the slump in real estate values, there was evidently little or no value to the vendees' interest in the Lee Hotel property contract. The testimony discloses that the value of this property at that time was from $8,000 to $10,000, but unpaid instalments on the contract and past due taxes on the property at least equalled or exceeded the value of the property. In view of the conditions above outlined, evidently Annett and Stout decided to divest themselves of the vendees' interest in the Lee Hotel contract. As a matter of fact the vendees' copy of the contract was surrendered to the Davis Investment Company, the vendor; and on January 10, 1933, a new contract of purchase was given by the Davis Investment Company to Mrs. Grace Stout, wife of Edward M. Stout. The consideration for this new contract was the agreement of Grace Stout to pay the monthly instalments of the purchase price which were fixed as the unpaid portion of the purchase price in the original contract, and also her agreement to make payment of back taxes. Further, the vendor's acceptance of the new contract released plaintiff and Edward M. Stout from liability on the original contract.

Annett claims that he was not aware of the surrender of the original contract, which he claims was given to the vendor by defendant Stout, and also Annett claims he did not know at the time that a new contract was given to Grace Stout. However,

as hereinafter noted, Annett at least shortly there-
after was fully aware of the whole transaction. The
claim of plaintiff more fully appears from the fol-
lowing quoted from his bill of complaint:

"That the defendant, Edward M. Stout, without
the knowledge or consent of this plaintiff, Roy An-
nett, and without the execution, acknowledgment
and delivery of any written assignments of the
plaintiff's undivided one-half vendee's interest in
this property and without any release thereof, writ-
ten or otherwise, on January 10, 1933, did induce
by false and fradulent means, the Davis Invest-
ment Company, the vendor, to execute, acknowledge
and deliver a new executory contract to Grace Stout,
the wife of Edward M. Stout, for the unpaid bal-
ance, in principal thereon of $4,833.48 with reduced
monthly payments thereon of $35 a month; and that
the defendants, Davis Investment Company, Ed-
ward M. Stout  and Grace Stout all had knowledge
at the time of such execution that the plaintiff had
a valid and existing undivided one-half vendee's
interest in the said premises which he had not re-
leased in writing or otherwise, had not assigned
by written assignment, and had not consented to
the execution of the new contract to Grace Stout.
*    *    *

"That this plaintiff, in October, 1935, became
apprised of the fact that a new contract had been
executed by Davis Investment Company, vendor,
to Grace Stout, as vendee, as hereinbefore set
forth."

On the other hand the position of defendants is
outlined by the following portion of Edward M.
Stout's answer:

"That this agreement and the act of surrendering
the so-called Stout-Annett contract and the delivery
thereof to the Davis Investment Company was all
arranged with the knowledge, approval and sanc-
tion of the plaintiff, Roy Annett; that the said Grace
Stout thereafter paid the delinquent taxes in the

amount of $4,824.43, together with the other required monthly payments of principal and interest and this defendant and the plaintiff were freed from obligation on the contract."

Our review of this record brings the conclusion that the trial judge in reaching his decision was over impressed with plaintiff's contention that he should prevail because so far as disclosed by the testimony he had never released or assigned his vendee's interest *in writing*. On this appeal the question is presented:

"Can there be a parol surrender or abandonment by a vendee of his interest in a land contract to the vendor-fee owner?"

The answer is in the affirmative and we have so held in numerous cases. See *Stevens* v. *Wakeman*, 213 Mich. 559; *Hall* v. *Proctor*, 221 Mich. 400; *Nelson* v. *Hacker*, 278 Mich. 383. Headnotes in the *Nelson Case* read:

"Conduct on the part of both the vendor and purchaser which is inconsistent with the continuance of the contract of sale constitutes rescission by abandonment.

"Rights of either party under a contract for sale of land may be lost by abandonment and it is not necessary that relinquishment be in writing as an abandonment may be deduced from circumstances or course of conduct."

It follows that a fundamental question, and we think a controlling one, is this: Does it appear from this record that at the time the vendor entered into a new contract with Grace Stout, or shortly prior thereto, plaintiff abandoned his rights as a vendee under the original land contract? In addition to the facts above stated the following are pertinent.

At the time plaintiff and Edward M. Stout acquired their vendees' interest in the original contract in 1926, the former was employed as a salesman in the latter's real estate office. But in December, 1932, the two formed a partnership, which was dissolved in January, 1934. It was during this period that the new contract of purchase was entered into by Grace Stout on January 10, 1933. We do not feel it is particularly or at all decisive of plaintiff's contention herein that from January 10, 1933, to the dissolution of the partnership, approximately a year later, the record of receipts from the Lee Hotel property and the payments on the contract was kept as part of the partnership business. Admittedly Mr. Stout throughout was looking after Mrs. Stout's interest incident to the contract, and seemingly was carrying it on incident to the partnership business.

In the years following the dissolution of the partnership in January, 1934, until he instituted this suit, November 1, 1945, plaintiff made no payments on this land contract. Although he knew about the Grace Stout contract, he testified he had never made a payment thereon or offered to do so, and that he never had made a claim to her that he had an interest in the contract. When this suit was commenced, more than 12 years after Mrs. Stout had contracted to buy the Lee Hotel property, owing to a decided change in economic conditions, this property, according to the testimony, was worth in the neighborhood of $20,000. At the time of trial there remained unpaid on the contract only $1,581.-54. Seemingly this gave rise to plaintiff's assertion to a right in the contract. At least had conditions been reversed and there been default and foreclosure of the contract, we think plaintiff herein could have and would have successfully resisted liability.

That the contract vendor has acquiesced in the

abandonment by plaintiff of his vendee's right under the original contract is quite conclusively shown by the vendor's acceptance of the vendees' copy of the original contract, which was surrendered to the vendor about the time it entered into the new contract with Grace Stout. At the trial the vendor produced both its copy and the vendees' copy of the contract. Acquiescence of the vendor is further shown by its acceptance of Grace Stout as the contract vendee during the period of years prior to plaintiff's suit. The good faith of the vendor is not questioned. As noted above, this suit as to it was dismissed with consent of plaintiff's counsel.

A most persuasive phase of the record as disclosing plaintiff's abandonment of his vendee's interest appears in the following. In 1942, Annett testified in a bankruptcy proceeding. He was questioned concerning what had been done with his vendee's one-half interest in the Lee Hotel contract. As to Mrs. Stout's contract and Annett's knowledge concerning it, the following is disclosed by his testimony in this case and in the bankruptcy proceedings:

"*Q.* Didn't you tell Mr. Stout you were indebted to the bank and you had to get rid of the property (the Lee Hotel property) or you would lose it? * * *

"*A.* Certainly. * * * 'Of course, at that particular time I was involved here at the Community National Bank, or the Pontiac Commercial Bank and I had met with Mr. McPherson and Mr. Patterson (representatives of the bank). They had taken an assignment of everything I had except the property in the Lee Hotel, and we (plaintiff and Edward M. Stout) decided that the thing to do was to put the Lee Hotel at that time in Mrs. Stout's name.' * * *

"*Q.* And when you said (in the bankruptcy testimony) that 'we decided to put that in Grace Stout's name' you meant that the contract from the Davis Investment Company should run in Grace Stout's name, didn't you?

"*A*. If I testified to that that is the way it is.

"*Q*. Well, that is what you meant, wasn't it?

"*A*. Yes, I would say so.

"*Q*. And you intended, because of your financial obligations to the bank and the amount of taxes and the value of the property, that the contract might just as well be put in Grace Stout's name?

"*A*. That was our discussion. * * *

"*Q*. And that for you people to get anything out of it you would have to pay up the principal and taxes of about $10,000, you knew that, didn't you?

"*A*. Oh, yes. * * *

"*Q*. * * * 'Now, as I remember, you testified in the last hearing (in the bankruptcy proceedings) that at the time things were rather difficult for yourself and that you went to Mr. Stout and discussed this Davis Investment property, is that correct?

" '*A*. Yes, that is right.' * * *

"*Q*. Now, what was the date, the approximate date, you and Mr. Stout decided to put this property in Mrs. Stout's name? * * *

"*Q*. You just don't know?

"*A*. No, I don't know the exact date.

"*Q*. Or even the approximate date?

"*A*. I wouldn't want to say, I don't know. * * *

"*Q*. * * * 'Did Mr. Stout handle the placing of this contract in Grace Stout's name?

" 'A. Not any more than I did myself.' * * *

"*Q*. To get back to 1933, January; was Stout the moving party in the arrangements or were you?

"*A*. I wouldn't say that Ed (Mr. Stout) had any more to do about it than I did, and we were—we just simply went ahead and did it."

Without quoting further from plaintiff's testimony, given as late as 1942, in the bankruptcy proceedings, we think it quite conclusively appears that plaintiff has failed to establish his claim in the present case as hereinbefore quoted from his bill of complaint: "That the defendant, Edward M. Stout, without the knowledge or consent of this plaintiff

\* \* \* on January 10, 1933, did induce by false and fraudulent means, the Davis Investment Company, the vendor, to execute, acknowledge and deliver a new executory contract to Grace Stout." Further,. the charge just above quoted is emphatically denied in the testimony of Edward M. Stout; and in that respect, to some extent he is corroborated by the testimony of Mr. Davis, president of the vendor, Davis Investment Company.

As to the circumstances which led to Mrs. Stout's entering into her contract to purchase the Lee Hotel property, the following appears in her undisputed testimony:

"*Q.* How did you acquire that property?

"*A.* Well, I acquired it—Mr. Stout and Mr. Annett was buying it on a contract and was losing it and Mr. Stout advised me to take it over, that he thought some day it would be worth money.

"*Q.* How much did you pay Mr. Stout and Mr. Annett for that?

"*A.* Well, I signed a new contract and the downpayment was very small and I assumed it. Oh, it was about five thousand worth of taxes, back taxes, and about the same in back payments."

In reaching decision herein we have not overlooked the fact that during the life of Mrs. Stout's contract all payments thereon, including payment of taxes, were made out of the income received by the vendee from the contract property, and that such income exceeded the amount of the accrued contract payments. That, however, is merely an after-event or circumstance following the making of Mrs. Stout's contract; and if, as we find, Mrs. Stout was a bona fide purchaser, her good fortune should not redound to plaintiff's benefit. As above noted, circumstances subsequent to Mrs. Stout's purchase might have developed which would have been adverse rather than favorable to her interest. As

relevant to Mrs. Stout being a bona fide purchaser it may be noted that as to plaintiff's charge of fraud above quoted from his bill of complaint, the burden of proof was on plaintiff. Under this record he has not sustained that charge.

In our judgment it clearly appears from this record that there was a surrender and abandonment by plaintiff and Edward M. Stout of their vendees' interest in the Lee Hotel contract, that the same was accepted and acquiesced in by the vendor; and that under the new contract of January 10, 1933, Grace Stout became and is a bona fide vendee and entitled to her rights as such.

Because of our conclusion, above stated, it is not necessary to give consideration to appellants' contention that plaintiff, who waited from 1933 or 1935 until 1945 before bringing suit, is not entitled to relief because of laches in asserting his alleged right. But see *Stevens* v. *Wakeman, supra,* wherein a headnote reads:

"Plaintiff's claim that his action in directing that deed be made to his wife was a conveyance by parol and therefore void because in violation of 3 Comp. Laws 1915, § 11975 [3 Comp. Laws 1929, § 13411], cannot be sustained, since his oral request was followed by execution of the deed in which he acquiesced for over seven years."

The decree entered in the circuit court is reversed and a decree may be entered in this Court dismissing plaintiff's bill of complaint, with costs of both courts.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.