**In re Jeffrey D. and Deborah MILLER, Debtors.**

**Bankruptcy No. HK 87 2731.**

United States Bankruptcy Court, W.D. Michigan.

Sept. 9, 1988.

Edward Read Barton, Allegan, Mich., for debtors.

Curtis F. Hicks, Hentchel and Hicks Associates, Battle Creek, Mich., for creditors.

Joseph Chrystler, Kalamazoo, Mich., Chapter 13 Trustee.

## OPINION

LAURENCE E. HOWARD,
Bankruptcy Judge.

### LAND CONTRACTS—ABANDONMENT AND WAIVER UNDER MICHIGAN LAW

The parties have come before the court on an objection to confirmation of a chapter 13 plan and a motion for relief of stay under 11 U.S.C. § 362.

### FACTS

On July 23, 1985, debtors Jeff and Deborah Miller entered into a land contract with creditors David and Ann Gregory, the parents of Deborah Miller. Under the land contract the Millers were to pay a total purchase price of $5,000 at $100 per month, for the real estate and residence commonly known as 281 North Sixteenth Street, Battle Creek, Michigan. (Hereinafter, "281.") Sometime in the first half of 1987 the Millers fell into default on the land contract. The Millers decided to leave 281 and to rent the house next door, 283 North Sixteenth Street, owned by Joanna Cerva. (Hereinafter the "Cerva house.") At the end of May the Millers requested the telephone and electric utility companies to terminate their service at 281 and commence service in their names at the Cerva house, all effective as of June 1, 1987. This was done. On June 1, 1987, the Millers moved into the Cerva house. On June 15, 1987, the Gregorys obtained a Judgment of Land Contract Forfeiture on 281. The Millers rented the Cerva house from June 1, 1987, to July 17, 1987. Sometime in early to mid July the Millers attempted to rent 281 to a third party, but the arrangement was never con-summated. At the same time the Millers apparently decided to move out of the Cerva house. On July 9, 1987, the Millers requested that their telephone service be switched from the Cerva house to 47 Pleasant Avenue, Battle Creek, effective July 14, 1987.

■ At about this time Deborah Miller approached Ann Gregory to discuss the house at 281. Both parties agree that at this meeting Deborah Miller gave possession of her original land contract to Ann Gregory. Beyond this their accounts differ. Ann Gregory gives a very full account of the meeting. She testified that Deborah Miller came to her, explained that the Millers had financial difficulties, and asked to be allowed to rescind the land contract and be allowed to live at 281 as mere tenants under an oral lease for $100 a month rent. Ann Gregory agreed, and contends that Deborah Miller gave up her original land contract in token of this new arrangement. (Transcript, pp. 14–15.) Deborah Miller's account differs, although she never expressly denied Ann Gregory's account. Deborah Miller admits that she handed the contract to Ann Gregory, but with the purpose of finding out what was the total amount of the Miller debt under the contract and having that figure written on the contract.

Of the two accounts given above, the court finds Ann Gregory's more credible. According to Ann Gregory, Deborah Miller asked to be allowed to cancel the land contract, rent the house as tenants, and surrendered the land contract accordingly. (Transcript. pp. 14–15, 67–68.) In her direct testimony, Deborah Miller never contradicted this account. (Transcript, pp. 51–58.) It was only on cross-examination that Mrs. Miller stated that she surrendered the land contract in order to have the total amount due written upon it. Deborah Miller never explained why she needed to have that figure written on the land contract when it is clearly stated on the Judgment of Land Contract Forfeiture which was served upon her. Nor is there any indication in the record that Deborah Miller ex-

pected to receive the land contract back or insisted on its return. If her purpose was to learn how much she owed, it would be of no use to give the land contract to Ann Gregory unless she got it back with the figure written upon it. The court also notes that prior to this meeting the Millers evidenced every intent to leave 281. They had moved out of 281 and into the Cerva house, which is where they had transferred their utility service. True, the Millers had attempted to rent out 281, but that arrangement fell through and the record shows no further attempts by the Millers to rent out 281. At the time that Ann Gregory and Deborah Miller met, the Millers' land contract interest was seriously in default and was subject to a judgment of forfeiture with only about two months left of the redemption period. Furthermore, at the time the Millers were planning to leave the Cerva house and move not into 281 but into another rental home at 47 Pleasant.

Given this situation, the court must ask why did Deborah Miller return to 281 and why did Ann Gregory consent. There is no indication in the record that Ann Gregory waived the judgment of forfeiture or the running of the redemption period in order to allow the Millers to resume their land contract obligations. Deborah Miller really has no explanation for the events of that meeting; she did not even testify that Ann Gregory agreed to allow the Millers to resume their land contract obligations. Ann Gregory did have an explanation: that the land contract was surrendered and the Millers, who were looking for a new home anyway, moved into 281 as tenants. Given a choice between a rational explanation of these events and no explanation at all, the court must choose the explanation.

Moreover, the parties appear to have afterward acted on the assumption that the Millers were renting 281. On September 17, 1987, after the Millers filed their petition in bankruptcy, the Gregorys sought a Notice to Quit for failure to pay rent. Mr. Barton, the debtors' attorney, wrote to the Gregorys on September 26, 1987. His letter does not state that it is in reply to this notice, but it is subsequent to the notice. In it Mr. Barton does not contest the characterization of the debt as rent. Rather, he implicitly accepts that characterization and assures the Gregorys that they will be paid the "back rent", "on going rent", and the "rent obligation" due them through the plan. True, the Millers' schedules do characterize the obligation and arrearage as a land contract debt. However, that is one aberration in a general course of conduct which treated the land contract as abandoned. Based on all of the above, the court holds that Debtor Miller surrendered her land contract to Ann Gregory in token of the Millers' abandonment of their rights and interests under that instrument.

The Millers moved back into 281 on or about July 23, 1987. On that date the Millers paid $150 to the Gregorys. The form receipt of that date states: "Received of *Jeff and Debbie Miller One–Hundred for Month of July* Dollars for *Fifty-dollars for Month of April* By *Ann Gregory.*" (Defendants' Exhibit A.) Ann Gregory admits that there was another payment of $150 made in August, $100 on the current month's rent and $50 on an arrearage, also due on a land contract month, as with Exhibit A. However, no one at trial could produce a receipt for this second payment. (Transcript, pp. 26–27.) Ann Gregory contends that Deborah Miller made the $50 payments as back rent because the Millers hadn't paid for six to eight months prior to that. (Transcript, p. 26.)

## ISSUES PRESENTED BY THE OBJECTION TO CONFIRMATION

The Millers filed their petition under chapter 13 of the Bankruptcy Code on September 10, 1987. Their schedules list two obligations to the Gregorys, one described as "Land Contract" the other as "Arrearages." The plan proposes to treat the obligation due to the Gregorys as a land contract debt, the default of which the debtors propose to cure. The Gregorys object to this treatment and have brought a motion for relief from the automatic stay.[1] The

---

1. At the conclusion of the trial the court decided

on the record two of the issues relating to the

objection raises the question of whether the Millers' acts met the legal standard for abandonment under the relevant caselaw. That raises the further question of whether the acceptance of "back rent" for months prior to the Millers' abandonment constitutes a waiver of that abandonment by the Gregorys. Last, the court must consider whether the filing of the Millers' chapter 13 petition tolled the expiration of the 90 day redemption period that commenced on June 15th.

## ABANDONMENT OF THE LAND CONTRACT

■ The Millers' interest in the land contract was an interest in land. As a general rule, any conveyance of an interest in land must be done in writing or it will be void under the Michigan Statute of Frauds. M.S.A. § 26.906,[2] M.C.L.A. § 566.106. The scope of the Statute of Frauds includes a surrender of an interest in a land contract; the surrender of such an interest normally must be written in order to be valid. *Barton v. Molin,* 225 Mich. 8, 195 N.W. 797 (1923). However, as demonstrated in Judge Nims' recent opinion, the history of the Statute of Frauds has been one of constant equitable erosion. *Shanty Creek Lodge Association v. Deskin Land Trust (In re Deskin Land Trust),* 86 B.R. 491 (W.D.Mich.1988) (appeal pending). Michigan caselaw has recognized an exception to the rule in situations where the surrender of the interest in a land contract is accomplished by acts or operation of Law. *Underwood v. Slaght,* 213 Mich. 391, 182 N.W. 106 (1921).

In *Underwood* the land contract vendee, being in default, had agreed orally to give up his rights under the land contract and rent the real property as a tenant at will. The agreement was executed by the payment and receipt of rent. The titleholder gave the tenant notice to quit, and sued to recover possession. The tenant defended on the grounds that he was a land contract vendee. The Michigan Supreme Court held that:

> A mere verbal agreement to surrender is of course, void. But actual performance of an invalid parol agreement will always be sufficient surrender by operation of law. Reed on Statute of Frauds, § 781, and cases there cited. Parties to a land contract, when the vendee is in default, are at liberty to terminate the contract by mutual agreement and assume toward each other and the land a new or different relation, and if this is accomplished by oral agreement, followed by acts of both parties unequivocally recognizing the termination of the land contract and in recognition of and in the exercise of rights in accordance with and under the new contract, such as a holding under and in pursuance of its terms, then there is a surrender of the land contract by operation of law and the parties themselves have taken the surrender from without the statute of frauds.
>
> It must be held that, under the facts as determined by the verdict, there was a surrender of the land contract by act and operation of law, and the judgment entered was right.

*Id.* at 396, 182 N.W. at 108. (citations omitted.) Along these lines it has been held that the physical surrender of the land contract, coupled with subsequent conduct such as failure to pursue the contract and repeated disavowals of the contract are more than sufficient to established abandonment through parol surrender. *Annett*

request for relief from the automatic stay. Those are whether the property is necessary for reorganization and whether adequate protection has been offered. The court found on the record that the property is necessary and that adequate protection has been offered. (Transcript, pp. 79–80.) These questions become germane only if it is found that the Millers do indeed still hold rights under the land contract which may be cured.

**2.** Section 26.906 provides as follows:

No estate or interest in lands, other than leases for a term not exceeding one [1] year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

*v. Stout*, 322 Mich. 457, 34 N.W.2d 42 (1948).

In *Dundas v. Foster*, 281 Mich. 117, 274 N.W. 731 (1937), the Michigan Supreme Court considered the case of land contract vendees who, being in default on the land contract, entered into three successive annual leases with the vendors for the property in question. The vendees then brought a complaint for specific performance, by which they offered to pay the balance due and alleged that the leases had been entered into with the understanding that the land contract could always be revived. The Supreme Court denied specific performance and held the land contract abandoned, quoting *Corpus Juris* as follows:

> Abandonment by the purchaser is shown ...where he positively and absolutely refuses to perform the conditions of the contract, such as a failure to make payments due, accompanied by other circumstances, ...or where by his conduct he clearly shows an intention to abandon the contract.

*Id.* at 120, 274 N.W. 732, quoting 66 C.J. p. 731 et seq. The Gregorys assert that Deborah Miller's conduct meets this standard.

Applying the criteria set forth above to Deborah Miller's conduct as related by Ann Gregory, the court holds that the Millers, through Deborah Miller, have surrendered their land contract interest. Deborah Miller's acts—the surrender of the land contract, the entering into an oral lease, the taking of possession under that lease and the payment of two months rent under that lease—are all acts which unambiguously demonstrate an intent to abandon that is so clear as to constitute a parol abandonment of that land contract. Granted, this case does not present the long intervening years of inaction present in some of the cases cited above. But the cases do not stand for the proposition that many years must pass before a parol abandonment becomes effective. Such a lapse of time is merely one of many possible indications of an intent to abandon. The essential element of parol abandonment is not time elapsed but unambiguous acts committed which clearly show intent. The Millers committed such acts.

## WAIVER OF ABANDONMENT

In addition to paying two months rent, the Millers also made two payments of $50.00 each on "back rent." It is uncontested that until July, 1987, the Millers still held 281 under their land contract. In accepting these two payments the Gregorys clearly accepted two payments on the land contract arrearage. The Millers now contend that in so accepting the payments the Gregorys waived the default and abandonment and thereby revived the land contract.

Acceptance of such payments could work such a waiver in one of only two ways: by demonstrating a subjective intent to waive or as a matter of law. As to subjective waiver, the Millers' attorney makes the very valid commonsense observation that anyone can waive any legal right they hold. However, when a land contract vendee asserts that the vendor has waived some legal right the vendor holds in a forfeiture situation, the burden of proof is on the vendee. *Pappas v. Harrah*, 221 Mich. 460, 463, 191 N.W. 221, 221–222 (1922). The factual record in this case will not support a finding of waiver. The Millers did not even testify that in making the payments they did so in the belief the land contract had been reinstated or would be reinstated. Nor was there any testimony to indicate that in accepting those payments the Gregorys intended to reinstate the land contract. The Gregorys are lay people who held a judgment against the Millers for land contract arrears. Nothing on the face of the Judgment of Forfeiture would indicate that an abandonment of the land contract by the vendee to the vendor will satisfy the judgment for arrears. If the Gregorys accepted payment under the impression that they were entitled to both possession and arrearage payments, it did not constitute a subjective waiver of either the forfeiture or the abandonment. Since the burden is on the Millers to prove the facts constituting subjective waiver, and since there are no such facts in the record, the court must rule against them on this issue.

Turning to waiver as a matter of law, the Millers rely upon Michigan Court Rule 4.202(K)(2) for the proposition that it a least raises a presumption of waiver or acts to toll the expiration of the redemption period. That rule governs the issuance of the writ of restitution after the redemption period has run, and provides in part as follows:

(K) Writ of Restitution

(1) Request. When the time stated in the judgment expires, a party awarded possession may apply for a writ of restitution. The application must:

(c) if any money due under the judgment has been paid, show the conditions under which it was accepted; and

(d) state whether the party awarded judgment has complied with its Terms. (2) Hearing Required If Part Of Judgment Has Been Paid. A writ of restitution may not be issued if any part of the amount due under the judgment has been paid unless a hearing has been held after the defendant has been given notice and an opportunity to appear.

This rule prohibits the issuance of a writ of restitution without notice and hearing if the vendor has accepted a partial payment on the amount due under the judgment of forfeiture. This is not the same as tolling the redemption period, deeming such acceptance a waiver at law, or even raising a presumption of a waiver.

Michigan law provides that "the writ of restitution shall not issue if, within the time provided, the amount as stated in the judgment, together with the taxed costs, is paid to the plaintiff and other material breaches of an executory contract for purchase of the premises are cured." M.S.A. § 27A. 5744(6), M.C.L.A. § 600.5744(6). The Michigan Court of Appeals has written of this provision that:

Although there is presently no case law interpreting the statutory language "is paid", case law interpreting similar statutory language indicates that actual transfer of the entire amount of money due is generally required for compliance with redemption statutes. A mere showing of ability and intent to pay is insufficient.

*Karakas v. Dost*, 67 Mich.App. 161, 167, 240 N.W.2d 743, 746 (1976). That court has subsequently held that the acceptance of partial payments will not waive a default; redeeming vendees must pay in full. *Colby v. Tobba, Inc.*, 146 Mich.App. 592, 593, 381 N.W.2d 411, 412 (1985). Michigan Court Rule 4.202(K) does not purport to change this substantive law. By its own terms it is not a flat prohibition of the issuance of any writ of restitution if partial payments are made, nor does it toll the running of the redemption period. Indeed, since the fact of a partial payment will become evident to the court upon the filing of the application for the writ, which by the terms of 4.202(K) can only be filed after the redemption period has expired, it follows that there is no longer any redemption period to toll at the time the application is filed. The rule merely requires a hearing. The rule does not state the purpose of this hearing. The only logical interpretation of this rule is that the hearing is a prudential measure to allow the court to assure itself before issuing the writ whether any payments made constituted a subjective waiver. As noted above, this record does not support a finding of any waiver.

## CHAPTER 13 FILING AND PROPERTY OF THE ESTATE

■ The last issue to consider is the effect upon this case, if any, of the Millers' filing of their petition under chapter 13 of the Bankruptcy Code. The debtors contend that their chapter 13 filing makes the issues of surrender and waiver irrelevant. They argue that under the judgment of forfeiture they had until September 15th to redeem and that, under *In re Carr*, 52 B.R. 250 (Bankr.E.D.Mich.1985), the filing of their chapter 13 petition tolled the expiration of that redemption period and allows them to now cure any defaults under their chapter 13 plan.

Neither the Bankruptcy Code nor *Carr*, however, permits the resurrection of lost property rights. Under 11 U.S.C. § 541(a), property of the estate includes, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." As of the commencement of

this case the debtors held 281 as rental tenants. That is the extent of their rights. They had no interest under the land contract; as of the commencement of their case that land contract had been abandoned for about two months. That abandonment had not been waived. Nor can *Carr* be cited for a contrary interpretation of § 541(a). In *Carr* the debtor had filed his chapter 13 petition after entry of a judgment of forfeiture but before the expiration of the redemption period; there had been no intervening surrender of the land contract. The surrender of the land contract terminates the debtors' rights under that contract under Michigan law, for "the right of a party to a contract for the purchase of real estate may be lost by abandonment." *Houghton v. Collins*, 344 Mich. 175, 180, 73 N.W.2d 208, 211 (1955). At the commencement of this case the debtors held no rights under the land contract, nor any right to redeem or enforce that contract. Therefore, neither *Carr*, nor *In re Glenn*, 760 F.2d 1428 (6th Cir.1985), is applicable to this situation and the Court need not address the parties' arguments based on these cases.

## RELIEF FROM STAY

The Gregorys have also requested relief from the automatic stay provided for in § 362(a) on the grounds that the debtors have not paid their rent for the months of September, October and November, 1987. Prior to the hearing the parties had agreed that the debtors were to escrow their rent payments with the trustee pending resolution of this matter. No evidence was produced at trial as to whether or not the debtors have paid up their rent obligation.[3] Nevertheless, even if they have the Gregorys' request for relief from the automatic stay must be granted. From my holding above that the land contract was abandoned and the Millers are rental tenants, it follows that the Millers hold 281 as tenants at will under an oral month to month lease. However, relief from the automatic stay is conditioned upon the Gregorys' giving the

Millers at least thirty days' notice of any eviction.[4]

## CONCLUSION

The Millers surrendered their land contract interest in 281. The Gregorys did not waive this surrender, nor did they reinstate the land contract. Nor did the Millers revive this lost land contract interest by filing their petition for relief under chapter 13. At the inception of this case the Millers held 281 as rental tenants only. They held no land contract interest which might be reinstated under the Bankruptcy Code and their chapter 13 plan. Therefore, the court sustains the Gregorys' objection to the Millers' chapter 13 plan. The motion for relief from the automatic stay is also granted.

3. Since the parties have not disclosed to the court all of the details of their stipulation, the court shall not attempt to direct the distribution of the accumulated escrow funds, if any.

4. The court notes that the "Notice to Quit" may have been obtained in violation of the automatic stay, but as neither party addressed this question, neither will the court.