In re PRECIOUS INTERNATIONAL, LTD., Debtor.

PRECIOUS INTERNATIONAL, LTD. and James A. Cartelli, Esq., Plaintiff,

v.

BURRWOOD DEVELOPMENT CORP. and Raymond A. Nielsen, Defendants.

PRECIOUS INTERNATIONAL, LTD., Plaintiff,

v.

Raymond A. NIELSEN and Adrienne Nielsen and Berkman, Henoch, Peterson, Kadin, Peddy and Scarcella, Defendants.

Bankruptcy No. 89 B 20942, 90 ADV. 6002, 90 ADV. 6013, 90 ADV. 6014.

United States District Court, S.D. New York.

April 26, 1991.

---

Rattet & Co., P.C., New York City, for debtor.

Berkman, Henoch, Peterson & Peddy, Garden City, for Burrwood Development Corp. and Raymond A. Nielson.

James A. Cartelli, pro se.

## ORDER

VINCENT L. BRODERICK, District Judge.

This matter having come before the United States Bankruptcy Court for the Southern District of New York, The Honorable Howard Schwartzberg, and a trial having been conducted before that Court on February 28, 1991, and continuing on March 4, 1991, and Judge Schwartzberg having issued Proposed Findings of Fact and Conclusions of Law on March 21, 1991, which are incorporated herein by reference, it is hereby,

ORDERED, ADJUDGED AND DECREED, that the Debtor's complaints be, and the same hereby are, dismissed, and it is

FURTHER ORDERED, ADJUDGED AND DECREED, that defendant Burrwood Development Corp's counterclaim is granted, and that defendant Burrwood Development Corp. is entitled to a return of the downpayment held by plaintiff James

A. Cartelli, Esq., as escrow agent, in the amount of Two Hundred Thousand Dollars, plus interest, and it is

FURTHER ORDERED, ADJUDGED AND DECREED, that plaintiff James A. Cartelli, Esq., turn over the downpayment monies, plus interest, to Burrwood Development Corp., and it is

FURTHER ORDERED, ADJUDGED AND DECREED, that the Debtor, Precious International, Ltd., has no interest in and to the monies held by the Suffolk County Water Authority, the Long Island Lighting Company and the Village of Lloyd Harbor, and it is

FURTHER ORDERED, ADJUDGED AND DECREED, that the complaint filed by James A. Cartelli, Esq., seeking an attorney's lien on the escrow funds is dismissed.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The Chapter 11 debtor, Precious International, Ltd., removed to this court for trial two separate actions which it had previously commenced in the United States District Court for the Eastern District of New York against the defendants, Raymond A. Nielsen, and his wife, Adrienne Nielsen, their attorneys, Berkman, Henoch, Peterson, Kadin, Peddy and Scarcella, and Burrwood Development Corp., a corporation controlled by Raymond A. Nielsen, its president. The two removed cases are for breach of two separate contracts for the sale of real estate by the debtor to Raymond Nielsen and Burrwood Development Corp. The first contract, dated April 6, 1988 is for the debtor's sale of Lot # 10 in a 33–acre parcel owned by the debtor in Lloyd Harbor, Long Island, New York. The second contract, dated March 9, 1989, superseded the first contract and reflects the debtor's sale of ten of the eleven lots in the 33–acre parcel of land in Lloyd Harbor to Raymond Nielsen, who then assigned the contract to his corporation, Burrwood Development Corp. on March 20, 1989.

The two district court actions were removed to this court after the debtor's commencement of its Chapter 11 case on December 18, 1989. Thereafter, James A. Cartelli, Esq. was permitted to intervene as a party plaintiff and assert an attorney's charging lien in the sum of $60,000.00 with respect to the $200,000.00 deposit made by Burrwood toward the purchase of the real estate in question. Cartelli holds the $200,-000.00 deposit in escrow pursuant to an escrow agreement between the parties.

## PROPOSED FINDINGS OF FACT

1. On December 18, 1989, the debtor, Precious International, Ltd., filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continues to operate and manage its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor is a New York corporation engaged in the business of owning, developing and selling real estate. Its sole shareholder is Joanne Ciraldo. Her husband is Joseph Ciraldo ("Ciraldo").

3. Defendant, Raymond A. Nielsen ("Nielsen"), is the president of a bank in Long Island, New York and is president and principal shareholder of defendant, Burrwood Development Corp. ("Burrwood"). Adrienne Nielsen is the wife of Raymond A. Nielsen. Defendants Henoch, Peterson, Kadin, Peddy and Scarcella (the "Henoch firm") are the attorneys for the Nielsens and Burrwood.

4. On October 11, 1989, the debtor commenced two civil actions in the United States District Court for the Eastern District of New York. In the first action the debtor alleged that Nielsen breached a contract dated April 6, 1988 for the purchase of Lot # 10 in a 33–acre parcel owned by the debtor in Lloyd Harbor, Long Island, New York. In the second action, the debtor alleged that Nielsen and Burrwood breached a superseding contract between the parties, dated March 9, 1989, whereby the debtor agreed to sell to Nielsen ten of the eleven lots in the 33–acre Lloyd Harbor estate, which Nielsen assigned to Burrwood on March 20, 1989.

5. Pursuant to an Application for Removal, dated February 6, 1990, the debtor removed the two district court cases to this court pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

6. The defendants filed with this court an answer to the complaint, asserting denials, affirmative defenses and a counterclaim to recover a $200,000.00 deposit made by Burrwood under the March 9, 1989 purchase contract and $41,667.50 delivered by Burrwood to Long Island Lighting Co. ("LILCO") on behalf of the debtor. The litigation is based on facts and events as follows:

7. On April 6, 1988, Nielsen entered into a written contract with the debtor to purchase Lot # 10 in a 33–acre parcel owned by the debtor in Lloyd Harbor, Long Island, New York. Nielsen contemplated constructing a luxury home for his family on this plot with the help of John Kean ("Kean") of Kean Development Corporation, a specialist in home construction.

8. The April 6, 1988 contract required Nielsen to post a cash deposit in the sum of $75,000.00, to be held in escrow by Nielsen's attorneys and to be paid to the debtor on the closing of the contract or upon Nielsen's default.

9. Lot # 10 was to be one of the eleven lots which the debtor purposed to develop by constructing two-acre luxury single family residences on the Lloyd Harbor estate. At the time the only home on the 33–acre estate was a 19,000 square foot mansion located on Lot # 7, which was in need of substantial renovation and repair. Ciraldo promised Nielsen that he would restore this mansion for his own use as the Ciraldos' residence. The gardens adjacent to the mansion had been designed by Frederick Law Olmstead, the designer for Central Park in Manhattan. Ciraldo had informed Nielsen and Kean that he had consulted the Frederick Law Olmstead Library in Massachusetts for the original site plans for the mansion and surrounding grounds.

10. The April 6, 1988 contract contained language as to the closing date, which read as follows:

### 3. *Closing Date.*

The closing shall take place at the offices of Seller's attorney or at Purchaser's lending institution 10 days after Purchaser receives written notice from Seller that Seller has satisfied all of the Representations, Warranties and Covenants set forth in paragraph 9 hereof. In the event Seller fails to satisfy said Representations, Warranties and Covenants within one year from the date hereof, Purchaser may, at his option, elect to cancel this Contract, whereupon Seller shall return to Purchaser the Contract payment together with interest earned thereof.

11. On March 9, 1989, Nielsen and the debtor entered into a written contract whereby Nielsen agreed to purchase the entire 33–acre estate other than Lot # 7, which contained the 19,000 square foot dilapidated mansion. The purchase price was $7,250,000.00. Paragraph 2(d) of the rider annexed to the March 9, 1989 contract provided that the premises were to be sold subject to the April 6, 1988 contract under which Nielsen agreed to purchase Lot # 10 in the proposed subdivision of the 33–acre estate.

12. The 1989 contract provided that Nielsen could assign all his rights under the contract, in which case, he would be released of all obligations under the contract except the obligation to file a subdivision map for the 33–acre parcel.

13. On March 20, 1989, Nielsen assigned the 1989 contract to his corporation, Burrwood, which had the effect of releasing Nielsen from all personal obligations under the 1989 contract other than the filing of the subdivision map.

14. At the trial, Kean testified that he was going to work with Nielsen and Burrwood to design and construct luxury homes on the 33–acre parcel which would sell for over $2 million each, with the restored mansion to serve as the centerpiece for the project. He testified that the proposed development would not be successful if the mansion and the surrounding grounds re-

mained in a dilapidated state because potential customers and lenders would not accept the current condition of the mansion and surrounding grounds. Nielsen and Kean testified that it would cost approximately $500,000.00 to restore the mansion and grounds. Nielsen further testified that Ciraldo refused to deposit an escrow fund to cover the restoration work, but that Ciraldo promised that he would restore the mansion and the surrounding grounds to the original condition before the close of title under the 1989 contract.

15. Paragraph 18 of the rider annexed to the 1989 contract specifies certain pre-closing obligations of the selling debtor as follows:

18. Prior to closing Seller agrees to perform the following work on Lot No. 7:

(a) repair and replace windows and doors;

(b) cut grass and trim shrubbery;

(c) remove dead trees from the front and side of the dwelling;

(d) paint all exterior trim;

(e) repair roof, gutters and leaders; and,

(f) clean and maintain grounds.

Notwithstanding the above Seller agrees that it will keep the Lot and all improvements thereon in good order and repair, including but not limited to, seeding, watering and mowing all lawns, pruning and external care of all the buildings, all in a manner and with such frequency as is consistent with good property management. If Seller shall fail to meet such obligations, then and in that event, Purchaser shall have the right to enter upon the premises and complete such obligations. Any and all expenses that Purchaser may sustain in connection therewith shall be bourne (sic) by Seller. This clause shall survive the closing of title and delivery of the Deed and shall be binding upon Seller's successors or assigns.

16. Additionally, paragraph 16 of the rider to the 1989 contract obligated the debtor to submit documentation required under the Decision of the Planning Board of the Village of Lloyd Harbor, dated July 14, 1988 and filed on August 2, 1988 with the Village Clerk. Specifically required, was the documentation specified in the Planning Board's decision under paragraph A–1, A–2, A–6, A–7, A–9 and A–10. This pre-closing obligation of the debtor required the following:

1. Submit documentation required by the Planning Board in order to render an opinion which would result in the execution of the map by the Village of Lloyd Harbor (Resolution, p. 3, A–1);

2. Submit signatures and endorsements of approval by the Suffolk County Department of Health affixed to the original linen of the map (Resolution, p. 4, A–2);

3. Submit a certificate of title certifying to the Village that Precious was the owner of the premises; and identifying the holders of all liens and encumbrances on the property (Resolution, p. 5, A–5);

4. File with the Village Attorney proper conveyances free and clear of all encumbrances in a form approved by the Village Attorney for drainage easements and facilities shown on the map with Precious being the certified owner (Resolution, p. 5, A–7);

5. File with the Village Attorney for recording at the Suffolk County Clerk's Office a declaration of conveyances and restrictions (Resolution, p. 5, A–9);

6. Demonstrate the consent of any mortgagee to the filing of the covenants and restrictions (Resolution, p. 5, A–9); and

7. Submit an original letter from the Postal Authority and Fire Protection Authority for the approval of the Board of Trustees the name of the subdivision street (Resolution, p. 7, A–10).

17. On March 9, 1989, Burrwood deposited $100,000.00 with James Cartelli, Esq. ("Cartelli"), the attorney for the debtor, to be held in escrow as a down payment on the contract.

18. At Burrwood's request, Lloyd Harbor agreed to extend the map filing date to July 2, 1989 and to recognize Burrwood's interest as developer when title closed between the debtor and Burrwood. Thereafter, on April 6, 1989, Burrwood deposited an additional $100,000.00 with Cartelli as

escrow agent in accordance with the 1989 contract rider.

19. According to Cartelli's testimony, the original closing date was April 21, 1989. However, the debtor was not prepared to close then. Burrwood elected to extend the closing date to May 30, 1989.

20. Nielsen met with various banks for the purpose of obtaining funding to finance the purchase of the 33–acre property. Union Savings Bank was prepared to extend financing, as was the North Fork Bank and Marine Midland. However, upon inspection of the property, Nielsen learned that windows and doors on the mansion which were in need of repair, but had not been repaired. The grass and shrubbery on the lot where the mansion was located had not been properly cut or trimmed. Some, but not most dead trees, were removed from in front of the mansion, whereas felled trees from the other lots were dumped on Lot # 9. All the exterior trim on the mansion had not been properly painted and the roof, gutters and leaders on the mansion were in need of repair. Generally, the grounds around the mansion were not properly maintained.

21. In June of 1989, Ciraldo set June 23, 1989 as the closing date, which Burrwood responded was unacceptable because the debtor had not yet restored or repaired the property nor had it complied with many of the requirements specified by the Lloyd Harbor Planning Board. Burrwood advised the debtor that pursuant to paragraph 17(d) of the 1989 contract, Burrwood was entitled to extend the closing date until the debtor satisfied its contractual obligations or until Burrwood terminated the contract. Accordingly, Burrwood did not appear for a contract closing on June 23, 1989, as requested by the debtor. Burrwood did not receive any notice from the debtor in June of 1989 that a closing was held or that Burrwood was in default.

22. On June 29, 1989, the debtor's counsel forwarded some documentation to Lloyd Harbor's counsel that was required for a closing under the contract.

23. On July 14, 1989, the debtor was informed by Burrwood that Lloyd Harbor's counsel required specific additional information and revisions before Lloyd Harbor would approve the project.

24. On July 19, 1989, the debtor forwarded to Lloyd Harbor's counsel some additional documentation.

25. The map of the subdivision was filed in July of 1989 in the Suffolk County Clerk's Office by Burrwood's counsel.

26. On August 28, 1989, Burrwood's counsel advised the debtor that Burrwood was ready and able to close title, but that the repairs and renovations with respect to the mansion, which were the debtor's obligations, had not been performed and that the debtor should tend to these requirements.

27. On September 5, 1989, the debtor's attorney, Cartelli, wrote to Burrwood's counsel that the debtor had tendered a deed on June 23, 1989 and that Burrwood was in default. The debtor's counsel, Cartelli, also informed Burrwood that the debtor demanded Burrwood's $200,000.00 contract deposit, which was held in escrow by Cartelli.

28. On September 11, 1989, Burrwood's counsel notified the debtor's counsel that the debtor had failed to satisfy its obligations under the contract and that pursuant to the terms of the contract, Burrwood was terminating the contract and demanded a return of its down payment.

29. In addition to the contract deposit, Burrwood deposited $52,783 with Suffolk County Water to secure water services for the property. This sum has since been returned to Burrwood. Burrwood also deposited $41,667.15 with LILCO to secure the installation of electric utilities. On June 30, 1989, Burrwood deposited with Lloyd Harbor $110,000.00 for the estimated costs of the facilities to be installed on the subdivision; $5,500.00 for inspection fees and $8,250.00 representing the Parkland Conservation Site Fund. It is not clear how much of these funds were returned to Burrwood, although the complaint simply seeks a return of the $200,000.00 contract deposit. Burrwood also spent approximately $12,000.00 for an aerial photograph

of the property for use in sales discussions with prospective house buyers.

30. In view of the fact that Burrwood terminated the contract before the debtor filed its Chapter 11 case, this court entered an order on September 24, 1990 denying the debtor's motion seeking assumption of the 1989 contract because the contract was no longer in force.

31. There was no evidence to dispute the fact that Cartelli performed legal services for the debtor before the commencement of its Chapter 11 case and that he holds a claim in the sum of $60,000.00 for those prepetition legal services. The only issue in dispute as to Cartelli is whether or not any part of the $200,000.00 sum which Burrwood deposited in escrow as a down payment on the contract is subject to Cartelli's claim for an attorney's lien.

32. Paragraph 7 of the March 9, 1989 contract specified April 21, 1989 as the closing date for the debtor's sale of the 33–acre estate to Nielsen. Paragraph 17 in the rider annexed to the contract provides that at the request of the purchaser, the closing date may be extended to May 30, 1989. Ironically, it was not the purchaser, Burrwood, which requested an extension, but instead, the debtor, as seller, requested this extension, which was consented to by Burrwood's counsel.

33. The evidence reveals that on May 30, 1989, the debtor, as seller, had failed to comply with all the obligations imposed on it under the contract. The debtor had not satisfied the requirements delineated by the Lloyd Harbor Planning Board which were preconditions to closing. Accordingly, pursuant to paragraph 17(d) of the rider annexed to the March 9, 1989 contract, Burrwood had the option of extending the contract or electing to terminate it. The option was expressed in the contract as follows:

> (d) Time shall be "of the Essence" with regard to the May 30, 1989 closing date. Notwithstanding the above, if Purchaser has elected to close title and Seller has failed to comply with all of the obligations hereunder and is unable to close title pursuant to the terms of this Contract, then in that event, the closing date shall be extended without any additional consideration or additional contract deposit until Seller has satisfied its obligations hereunder or until Purchaser elects to terminate this Contract.

34. After the established May 30, 1989 closing date, when the debtor was not prepared to close title as required, the right to extend the closing date or terminate the contract thereafter belonged exclusively to Burrwood, the purchaser. By letter dated June 16, 1989, the debtor's counsel fixed June 23, 1989 as the closing date even though the debtor had not satisfied the requirements of the Lloyd Harbor Planning Board. As of June 23, 1989, when the debtor purported to hold Burrwood in default because the debtor claimed that it was ready to close title, it had failed to satisfy the pre-conditions for closing, namely complying with the Lloyd Harbor Planning Board's requirements. These unfulfilled conditions included furnishing an original linen of the map; obtaining signatures and endorsements of approval by the Suffolk County Department of Health; submitting a certificate of title certifying that the debtor was the owner of the premises; filing with Lloyd Harbor proper conveyances for purposes of drainage easements and facilities on the property; providing the original executed covenant and restrictions; filing the consent of any mortgagees to the filing of the covenant and restrictions; and file an original letter from the Postal Authorities and Fire Protection Authority for the approval by the Board of Trustees. Nonetheless, the parties continued to act as if the March 9, 1989 contract for the sale of the 33–acre estate was still open because the debtor forwarded on June 29, 1989 additional documentation required by the Lloyd Harbor Planning Board. Thereafter, on July 19, 1989, the debtor forwarded more documentation required by the Lloyd Harbor Planning Board.

35. The March 9, 1989 contract was still open on August 28, 1989 according to the actions of the parties when Burrwood informed the debtor that it was still ready, willing and able to close.

■ 36. The debtor's notice of termination of the March 9, 1989 contract, given on September 5, 1989, was ineffective because the original contract closing date of April 21, 1989 was not met by the debtor, nor could it meet the adjourned closing date of May 30, 1989. Thereafter, only the purchaser, Burrwood, could elect to extend the contract or exercise the contractual option of terminating the contract in accordance with paragraph 17(d) of the annexed rider.

37. Burrwood executed its option to terminate the March 9, 1989 contract on September 11, 1989 and demanded a return of its down payment. Burrwood's termination of the contract was confirmed by this court by order dated September 24, 1990, when the debtor's motion to assume the contract and Burrwood's motion to compel the debtor to reject the contract were denied because the contract had been terminated by Burrwood before the Chapter 11 case was commenced.

■ 38. Burrwood contends that the April 8, 1988 contract, whereby the debtor agreed to sell Nielsen Lot #10 in the 33-acre estate, was superseded and cancelled by the March 9, 1989 contract in which Burrwood agreed to purchase the entire 33-acre parcel, including Lot #10, subject to the 1988 contract. This point is academic because there was no evidence that the debtor satisfied all the representations, warranties and covenants set forth in the 1988 contract. Paragraph 3 in the rider annexed to the 1988 contract provides that the closing shall take place ten days after Nielsen received written notice from the debtor that it satisfied all the representations, warranties and covenants set forth in the 1988 contract. There was no evidence that the debtor gave the required written notice to Burrwood as a condition to fixing the closing date, nor was there any evidence that the debtor had connected all utilities and completed all roads. These requirements had to be satisfied within one year from April 6, 1988, as set forth in Paragraph 3 of the rider. Therefore, Nielsen cannot be in default when no closing date was set for his purchase of Lot #10.

■ 39. The debtor is no longer in a position to set a closing date under the 1988 contract because it entered into a settlement of a foreclosure action commenced by the mortgagee, Union Savings Bank, pursuant to which settlement the debtor conveyed the 33-acre estate to Union Savings Bank. Therefore, the debtor may not now hold Nielsen or Burrwood liable for a breach of the 1988 contract.

■ 40. In light of Burrwood's election to terminate the March 9, 1989 contract with the debtor, Burrwood is entitled to a return of the $200,000.00 down payment held in escrow by the debtor's counsel, James Cartelli.

■ 41. The escrow funds held by Cartelli under the March 9, 1989 contract as a down payment by Burrwood towards the purchase price do not constitute property of the debtor's estate and must be returned to Burrwood. Therefore, the escrow funds are not subject to Cartelli's attorney's lien because Burrwood is not liable for the legal services performed by Cartelli for the debtor.

## DISCUSSION

Having determined that the debtor has failed to sustain its burden of proving that the defendants breached either the 1988 or 1989 contracts for the purchase of real estate from the debtor, there is left for determination whether the debtor's attorney may assert an attorney's lien against escrow funds which are not property of the debtor's estate. To state the question is to answer it.

■ When Burrwood elected not to purchase the real estate covered by the 1989 contract with the debtor and elected, instead, to terminate the contract in accordance with the termination option under the contract, the debtor's attorney, James Cartelli, was then obligated to return the escrow funds to Burrwood. The debtor's attorney may not assert an attorney's lien for his services or expenses against escrow funds deposited by someone other than the client, because the attorney is only a custodian and the funds belong to the depositor

and not to the client. *United States v. J.H.W. & Gitlitz Deli & Bar, Inc.*, 499 F.Supp. 1010, 1015 (S.D.N.Y.1980); *Mayeri Corporation v. Shea & Gould*, 112 Misc.2d 734, 447 N.Y.S.2d 413 (Sup.Ct.N.Y.Co. 1982). The debtor's legal and equitable rights to the funds held in escrow terminated prior to the commencement of its Chapter 11 case, with the result that the funds could not qualify as property of the estate within the meaning of 11 U.S.C. § 541 because the debtor lacked any interest in the real estate contract which had been terminated prepetition. *See In re Miller*, 90 B.R. 865, 871 (Bankr.W.D.Mich.1988) (debtor's rights under a land contract were terminated two months before the bankruptcy petition was filed, so that the contract was not property of the estate). Accordingly, Burrwood is entitled to a return of its funds, unencumbered by the attorney's lien claimed by the debtor's attorney.

PROPOSED CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a proceeding relating to a case under title 11 and is not a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The proceeding was heard pursuant to 28 U.S.C. § 157(c)(1).

2. The debtor has failed to establish by a preponderance of the evidence that the defendants have breached either the 1988 or 1989 real estate contracts with the debtor. Thus, the complaints on file in the debtor's two removed actions should be dismissed.

3. Burrwood has effectively exercised its termination option under paragraph 17(d) of the rider annexed to the March 9, 1989 contract with the debtor and terminated the contract by letter dated September 11, 1989, with the result that Burrwood is entitled to the funds deposited as a down payment and the right to receive deposits held by third parties, such as LILCO, the water company or Lloyd Harbor.

4. Burrwood's counterclaim for the return of the funds which it deposited in accordance with its proposed real estate

transaction with the debtor should be granted.

5. The complaint filed by James Cartelli, attorney for the debtor, which seeks an attorney's lien on the escrow funds deposited by Burrwood under the March 9, 1989 contract should be dismissed. An attorney's lien may not be maintained against escrow funds which were not deposited by the debtor client and which do not constitute property of the estate.

6. The foregoing Proposed Findings of Fact and Conclusions of Law are filed pursuant to Bankruptcy Rule 9033.

Dated: White Plains, New York
       March 21, 1991.